O

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **J. PAUL CHARLEBOIS,** | **CASE NO. SACV 10-0853 DOC (ANx)** |
| Plaintiffs, | |
| v. | **O R D E R GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| **ANGELS BASEBALL, LP; CITY OF ANAHEIM, ET AL,** | |
| Defendants. | |

Before the Court is Plaintiff J. Paul Charlebois ("Plaintiff")'s Motion for Class Certification. After considering the moving, opposing, replying, and supplemental papers, and two rounds of oral argument by counsel in January 2011 and June 2011, the Court hereby GRANTS Plaintiff's Motion.

**I.    FACTUAL BACKGROUND**

In 2003 the current Angels ownership acquired the Major League Baseball team known as the Anaheim Angels. The Stadium underwent several renovations, most recently in 1998. Defendants' Opposition to Plaintiff's Original Motion for Class Certification ("Opp'n"), 2. The

City of Anaheim approved these renovations at multiple stages. Plaintiff's Original Motion for Class Certification ("Motion"), 3.

Plaintiff is a longtime baseball fan living in Los Angeles County who relies on a wheelchair for mobility. Declaration of J. Paul Charlebois ("Charlebois Decl."), ¶ 2. Plaintiff has attended several Angels home games over the past four years. *Id.* at ¶ 3. This lawsuit arises out of an experience he had on July 12, 2009, when he attended a baseball game (the Yankees vs. Angels) at Anaheim Stadium with Scott Schutzman ("Schutzman") and Eugene Feldman ("Feldman"). *Id.* Plaintiff alleges that he was provided a seat in Section 322 on the Club level and that he expected to sit near that seat and to have the option of using the services provided to other ticket holders in that section. Instead, when Schutzman accompanied him and Feldman to the Section, Plaintiff found that the seats were not wheelchair accessible. After inquiring from the usher about where to obtain wheelchair accessible seating on the Club levels, he was informed that only two seats on the entire Club level were wheelchair accessible, and that both were occupied. According to Plaintiff, the usher then told him that if he wished to use the seats in Section 322, he would need to be carried down to them. Plaintiff found this to be humiliating and insensitive. *Id.* at ¶¶ 5-6. As a result, Plaintiff went to the Terrace level, where he knew there were accessible seats, but missed much of the game during the time it took to get there. Furthermore, Plaintiff alleges that the sight lines in the Terrace level were inferior, as they were in the last row of the level. *Id.* at 6. There were also no waiting services in that level, as on the Club level. *Id.*

Plaintiff further alleges that Defendants Angels Baseball LP ("Angels") and Defendant City of Anaheim ("Anaheim") (collectively "Defendants") fail to provide a reasonable means for wheelchair users to purchase or exchange wheelchair accessible seats. There is no way for wheelchair users to purchase accessible seats electronically or to exchange tickets without appearing physically at the box office or mailing the tickets to the Stadium before the game. *See* Declaration of Eugene Feldman ("Feldman Decl.") at ¶¶ 4, 6.

Plaintiff avers that Defendants have violated the law by failing and refusing to properly disperse wheelchair and companion seating throughout the Stadium. Motion, 3-4. More

2

specifically, Plaintiff argues that the Stadium only includes two wheelchair accessible seats on the entire Club level section–a section that also provides waiting services, which are particularly valuable to those in wheelchairs. *Id.* at 4. Plaintiff argues that that small number of seats falls significantly below the Americans with Disabilities Act ("ADA") requirement that each level have 1% wheelchair accessible seats available. *See* Corrected Declaration of Mark J. Mazz ("Mazz Decl."), 6. According to Plaintiff's evidence, Angels' Stadium has a total of 287 wheelchair spaces, but is required under the ADA to have at least 439 spaces. *Id.* at 7. Plaintiff also notes that two levels in the Stadium have no accessible seating, and that 64% of the wheelchair accessible seating is in the Terrace level, where the views are obstructed. Motion, 4.

Plaintiff's Complaint alleges violations of the Unruh Civil Rights Act, Cal. Civ. Code §§ 51-52; the Americans with Disabilities Act, 42 U.S.C. 12101 *et seq.*; the Disabled Persons Act, Cal. Civ. Code § 54.1; the California Business and Professions Code § 17200; and alleges discrimination by a state funded program or activity under Cal. Gov. Code § 1135. The class claims are "those disability related claims" in the Complaint: (1) that the Stadium fails to provide adequate wheelchair accessible seating throughout the Stadium and in the Club level; (2) that Defendants lack an accessible ticketing system for wheelchair users to purchase and exchange accessible seats; and (3) that Defendants failed to train all of its employees in order to properly accommodate the requests of wheelchair users. In its present Motion, Plaintiff asks the Court to certify its class so that Plaintiff may proceed to seek injunctive relief.

**II.     LEGAL STANDARD**

Federal Rule of Civil Procedure 23 governs class actions. Fed. R. Civ. P. 23. A party seeking class certification must demonstrate the following prerequisites: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)). A district court must engage in a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23(a). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996) (quoting *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996)).

The party may not rest on mere allegations, but must provide facts to satisfy these requirements. *Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977).

In addition to satisfying the four prerequisites of numerosity, commonality, typicality, and adequacy, a party must also demonstrate either: (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; or (2) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action. Fed. R. Civ. P. 23(b).

The decision to grant or deny a motion for class certification is committed to the trial court's broad discretion. *See, e.g.*, *Yamamoto v. Omiya*, 564 F.2d 1319, 1325 (9th Cir. 1977). In determining whether a plaintiff has satisfied the requirements of Rule 23, a court may not inquire into whether the plaintiff will prevail on the merits of the case. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78, 94 S. Ct. 2410 (1974). However, though a court must accept the substantive allegations in the complaint as true, *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982), in some cases it may be necessary for the court to look beyond the pleadings to determine whether the plaintiff has satisfied the certification requirements. *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364 (1982).

### III. DISCUSSION

#### A. Ascertainability

In order to properly ascertain a class, the definition must specify a "distinct group of plaintiffs whose members [can] be identified with particularity." *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 593 (E.D. Cal. 2008) (quoting *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). "A class definition is sufficient if the description of the class is 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'" *In re TFT-LCD (Flat Panel) Antitrust Litigation*,

267 F.R.D. 583 (N.D. Cal. 2010) (quoting *O'Connor v. Boeing North American Inc.*, 184 F.R.D. 311, 319 (C.D.Cal.1998)). Objective criteria must be used to ascertain class members. 5 James W. Moore, Moore's Federal Practice, § 23.21[1].

Plaintiff's Motion defines the Proposed Class as follows:

> Any mobility impaired person who has attended or desires to attend a baseball game at the Stadium but who has been or may be denied equal access to wheelchair accessible seating, amenities, privileges, services and facilities of the Stadium on account of his/her disability.

Defendants argue that this definition does not provide for an ascertainable class. Defendants first insist that the term "mobility impaired person" will necessarily demand a factualized inquiry into each class member's disability. Opp'n, 5. In his reply brief, Plaintiff refutes Defendants' objection but also proposes an amended version of his class definition for the Court's consideration:

> Any *wheelchair user* who has attended or desires to attend a baseball game at the Stadium but who has been or may be denied equal access to wheelchair accessible seating, amenities, privileges, services and facilities of the Stadium on account of his/her disability.

Reply, 3 (emphasis added).

As a threshold matter, the Court can consider Plaintiff's amended class definition. *See Greenwood v. Compucredit Corp.* 2010 WL 291842 (N.D. Cal. 2010) (noting that the plaintiffs amended their class definition in their reply brief); *Briggs v. U.S.*, 2009 WL 113387 (N.D. Cal. 2009) (considering language plaintiff inserted in a reply brief over the language in the motion); *Mortimer v. F.D.I.C.*, 197 F.R.D. 432 (W.D. Wash., 2000) (granting a motion for class certification on the condition that the parties submit further briefing, noting that "[i]n his reply brief, Plaintiff has changed his proposed definition of the class . . . ."); *Conant v. McCaffrey*, 172 F.R.D. 681, 693 (N.D. Cal. 1997) (finding that plaintiffs "substantially alleviated" the problem resulting from an overly broad class definition by "revising the class definition in their reply brief"). Furthermore, the Court is free to limit the class definition or give Plaintiffs leave to do

5

so; as such there is no reason the Court should not consider the language Plaintiff has already offered by way of amendment. *See Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 391 n.2 (C.D. Cal. 2008) ("It is well within the court's authority to redefine Plaintiffs' proposed class").

The Court finds that this definition adjusts for Defendants' concerns about the ambiguity of the term "mobility impaired" and sufficiently narrows the class to those whose experiences closely resemble that of Plaintiff. Defendants articulated specifically that language like "persons who use wheelchairs because of a disability" would be a "more objective standard." Opp'n, 5. Though Plaintiff's amended language excludes the latter half of Defendants' language, the Court believes that Defendants' language would actually require more of a factual analysis than Plaintiff's latest terminology.

Defendants also argue that the proposed class definition's inclusion of person who "desire" to attend Angel Stadium and "may be" denied equal access in the future hinges on a class member's state of mind. *Id.* This argument, pardon the pun, strikes out. Plaintiff's language simply aims to include all future class members who have not yet been injured. Reply, 3. Such inclusions are common in class actions; at the time at which future class members emerge, their claims will necessarily be ripe. *See, e.g.*, *Rodriguez v. Hayes*, 591 F.3d 1105, 1118 (9th Cir. 2010) ("The inclusion of future class members in a class is not itself unusual or objectionable.").

Nevertheless, Plaintiff once again supplies amended language to more clearly state the class definition in a future tense, rather than in what Defendants classify as a "state of mind" defense:

> Any wheelchair user *who has attended or will attend* a baseball game at the Stadium but who has been or will be denied equal access to wheelchair accessible seating, amenities, privileges, services and facilities of the Stadium on account of his/her disability.

Reply, 4 n.1 (emphasis added). The Court prefers this modified language as it clarifies that Plaintiff is not defining a class by examining intent, but rather is specifying that future class

members are included.[1]

Finally, "[t]he fact that class members will be required to submit some information in order to determine whether they are members of the class does not render the class definition unascertainable." *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 267 F.R.D. 583 (N.D. Cal. 2010). The Court therefore finds that Defendants' objections to Plaintiff's uncertainty about the class members lack merit.

### B. Numerosity

The requirement that "the class [be] so numerous that joinder of all members is impractical" is known as the "numerosity" requirement. Fed. R. Civ. P. 23(a)(1). There is no specific minimum number of plaintiffs asserted to obtain class certification; "[w]hether joinder [is] impracticable depends on the facts and circumstances of each case and does not, as a matter of law, require the existence of any specific minimum number of class members." *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994); *see also Espinoza v. Domino's Pizza, LLC*, 2009 WL 882845, *6 (C.D. Cal. Feb. 18, 2009 ). Nonetheless, courts have recognized that the numerosity requirement is generally satisfied when the class is in excess of forty members. *See Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982)(finding that 39 individuals was likely sufficient on basis of number alone), *vacated on other grounds*, *County of Los Angeles v. Jordan*, 459 U.S. 810, 103 S. Ct. 35 (1982); *Slaven v. BP America, Inc.,* 190 F.R.D. 649, 654 (C.D. Cal. 2000); *see also e.g. Gay v. Waiters' & Dairy Lunchmen's Union* , 549 F.2d 1330 (9th Cir. 1997). Furthermore, "[w]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982); *see also In re Abbott Laboratories Norvir Anti-Trust Litigation*, 2007 WL 1689899, *6 (N.D. Cal.2007) (quoting *Orantes-Hernandez*). Indeed, "[t]he sheer number of potential class members justifies [a] Court's finding" of numerosity. *Tchoboian v. Parking Concepts,*

---

[1]That being said, the Court agrees with Plaintiff that the "desire" referenced in the original definition of the class does not call for speculative state of mind inquiries akin to those in the cases cited by Defendants.

7

*Inc.*, 2009 WL 2169883, *4 (C.D. Cal. 2009).

Moreover, the size of the class is not the only relevant factor in determining that joinder is impracticable. *Jordan*, 669 F.2d at 1319. In *Jordan*, the Ninth Circuit noted that in cases involving a smaller number of class members, other factors can weigh in favor of finding numerosity, "such as the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought, should be considered in determining impracticability of joinder." *Id.* (citing 1 H. Newberg, Class Actions § 1105 (1977)).

In his initial Motion, Plaintiff only named four declarations of class members, but he provided a great deal of statistics suggesting that there are likely to be far more than forty class members, given the fact that there are over 2,000 wheelchair users who purchased tickets to an Angels baseball game at the Stadium in the past two years. *See* Chasworth Decl., 5; Plaintiff's Supplemental Motion, ("Supp. Motion"), 1. Plaintiff argued that even if just 15% of wheelchair accessible seats are sold at the Stadium each year, there would still be over 3,000 class members–and more likely, will be anywhere from 4,500 to over 280,000 people. *See* Chasworth Decl.; Helene Susan Weiss Declaration; Mazz Decl. ¶¶ 25-26. These types of data are frequently relied upon in finding that there is numerosity for class certification. *See, e.g. National Federation of the Blind v. Target*, 582 F. Supp.2d 1185 (N.D. Cal. 2007) (relying upon census data to find that thousands of class members were likely based on evidence of the number of blind people in the country).

Though the Court tentatively found numerosity at the January hearing on Plaintiff's Motion for Class Certification, the Court nonetheless requested that the parties cooperate to develop a survey to be sent to potential class members to help the Court in determining whether there is numerosity. The parties agreed to conduct a survey ("shared survey") through the help of Disability Rights Legal Center ("DRLC") to be sent to those who purchased or may have purchased wheelchair-accessible seating in the 2009-2010 seasons.

The survey included thirteen agreed-upon questions soliciting information about the survey respondents' general experience at Angels' games and Stadium and their level of

8

satisfaction with the seating options. It was sent to a total of 2,050 people, most of whom had been identified by Defendants as having purchased accessible seating during the 2009-2010 seasons. Of these 2,050, approximately 30 were wheelchair users identified by DRLC's database. Declaration of Maggie Hui ("Hui Decl."), ¶ 2. The DRLC received 206 responses to the survey, and prepared a report summarizing the responses. Exh. A to Hui Decl. The parties heavily dispute the implications of that survey. Plaintiff argues that the results of the shared survey suggest that more than forty plaintiffs will emerge. He emphasizes that fifty-eight people responding to the shared survey expressed some level of dissatisfaction with the wheelchair seating options. Defendants, however, point to the fact that the overall percentages of survey respondents indicating dissatisfaction with accessibility was relatively low.

In addition to having differing interpretations of the survey results, each party has also collected additional data without consulting with the opposing side. Unbeknownst to Plaintiff, Defendants asked DRLC to prepare two additional reports ("sub-reports") further breaking down the survey results for the 16 individuals who responded unfavorably to question 3 (involving overall experiences at Angels' Stadium) and the 58 people who responded unfavorably to question 8 (rating satisfaction with wheelchair accessible seating options). Meanwhile, Plaintiff conducted his own independent outreach to obtain additional surveys ("independent survey") for an additional 29 people. Plaintiff's counsel's staff then interviewed additional individuals and completed affidavits referencing those conversations. Through the contact information provided by all of the survey responses, as well as his prior data, Plaintiff obtained a total of 29 declarations of wheelchair-users. In total, Plaintiff purports to have identified 48 individuals who have given statements of some sort indicating they are potential class members. *See* Supplemental Declaration of V. James DeSimone ("Supp. DeSimone Decl."), 3-4. Both parties accuse the other of hiding their independently-collected data until the week before the Court's second hearing on Plaintiff's Motion.

Data Analysis

Defendants purport to defeat Plaintiff's case for numerosity with their sub-reports. However, some of the data from the sub-reports may even support a finding of numerosity. For

9

example, Defendants argue that, according to their results, only 31 people generally could not get a ticket in the section of the stadium they preferred. Hui Decl., Exh. C, question 9. However, that mischaracterizes the survey results. It is true that 31 people responded to Defendants' independent sub-survey by responding with a 1 and 2 rating of how often a ticket was available for purchase in their preferred section of the stadium (on a scale of 1 to 5, with 1 being never). Yet an additional 18 people responded with a score of 3, suggesting that on at least one occasion they were unable to find seating in their preferred section. *Id.* This may mean that they could be class members as well, depending on their experiences. This is just one example of the way in which Defendants' sub-survey does not necessarily discredit Plaintiff's argument in favor of numerosity. More importantly, the survey suffers from inherent design flaws; respondents answer in what is necessarily a subjective scale. A response of "2" from one respondent may be the equivalent of a "3" from another. As a result, the data are not as useful as they could have been–a reality that ultimately favors a heavier reliance on the more elaborate responses obtained from declarations as opposed to surveys.

Moreover, to the extent that Defendants point to low *percentages* of dissatisfaction across survey responses, they miss the point. It may or may not be true that many or even most respondents were generally satisfied with the accessibility options at the Stadium. But such a focus is a red herring; in order to obtain class certification or, more specifically, to show numerosity, a plaintiff need not show that a certain threshold percentage of potential class members have suffered or will suffer a harm. Rather, a plaintiff must demonstrate that he is likely to obtain a sufficient number of class members to make joinder infeasible, or alternatively, must show that other factors weigh in favor of a finding of impracticability of joinder. *Jordan*, 669 F.2d at 1319.

Nonetheless, it is indisputable that Plaintiff's results from his independent outreach efforts yield much stronger support for numerosity. Of the 29 additional people who received Plaintiff's independent survey, 17 expressed dissatisfaction with Angels' wheelchair seating options. This is, of course, a much higher percentage than found in the shared survey results. Furthermore, Plaintiff contends that all of these data are necessarily limited by the fact that they

focused on the 2009-2010 season, despite the fact that the class definition includes plaintiffs from 2006 to the present. *See* Supp. Motion, 4 n.3. Likewise, the Court believes that the minimal sample size surveyed of the total population eligible for class membership suggests a likelihood of more than forty plaintiffs.[2] Furthermore, as mentioned above, the declarations lend support for the idea that even where a respondent may have not indicated total dissatisfaction with their experiences at the Stadium on the survey, they may still have faced experiences sufficient to render them a class member. For example, one declaration by a wheelchair-user explains that the declarant "has never had a really bad experience" in terms of service at the Stadium, but then proceeds to describe significant barriers to equal access at the Stadium. *See* Declaration of Mary Ann Bennett. Likewise, another declaration reveals an undoubtedly sunny disposition towards Angels' games by a fan who "enjoy[s] attending Angels' games as often as [he] can" but then describes never being able to obtain a seat in the Club Level, where there would be a "wonderful atmosphere and a great day at the ballpark." Declaration of David Dodds, ¶¶ 3, 5. Other survey respondents who were not interviewed may have indicated overall satisfaction with the Stadium and their experiences in the survey, but that may reveal more about their team loyalty than whether or not they had an unequal experience that would render them class members. In other words, survey results may mask true experiences of discrimination.

However, as debated heavily at the second hearing on Plaintiff's Motion, the results of Plaintiff's independent outreach are less reliable than the shared survey results. To start, Plaintiff did not notify Defendants of this independent outreach effort until just a week before the second hearing date. Defendants' Report of Survey Results in Re Plaintiff's Motion for Class Certification ("Defendants' Supp. Response"), 3. The Court finds this concern to be de minimus, however, given that Defendants also did not provide notice of their additional DRLC sub-reports on the shared survey results until that same time. Next, Defendants object to the fact that Plaintiff did not seek court approval prior to collecting additional survey responses and

---

[2] Though, once again, the Court reiterates that Plaintiffs need not necessarily show forty class members to obtain class certification.

11

1  obtaining declarations, in spite of the fact that the Court had explicitly authorized only the shared
2  survey conducted cooperatively by the parties.  Though, at oral arguments, Plaintiff's counsel
3  strenuously defended his obligation to collect data to support his client's Motion–with which the
4  Court agreed– it is nonetheless striking that Plaintiff's counsel evaded Court supervision of a
5  process that the Court itself had requested.  Nonetheless, the primary concern of the Court is the
6  fact that Plaintiff's independent results are arguably tainted in the way they were collected.

7  Plaintiff's independent survey included an introduction stating:

8  Please assist us in our effort to improve wheelchair accessible seating at Angels
9  Stadium.  As part of our outreach effort, we are conducting a survey to assess
10  wheelchair users' experience at Angels Stadium.  Currently there are <u>only 2</u>
11  wheelchair accessible seats out of 3,733 on the Club Level.  This is the only level
12  that provides waiter and waitress service to ticket holders, a service very important
13  to those with limited mobility.  We would appreciate it if you would assist us in
14  our outreach efforts by completing this survey.

15  Defendants argue that such an introduction necessarily biased respondents to believe that the
16  Stadium has inadequate accommodations for wheelchair users.  Plaintiff insists that all the
17  information contained in the introductory statement is factually accurate, and that, as a result, it
18  cannot possibly mislead respondents.  Yet Plaintiff misses the point.  The question is not
19  whether the facts references are accurate or biased; the question is whether the emphasis–or even
20  inclusion-- of those particular facts just before respondents completed a survey suggested to
21  them the very answer which the survey purported to seek.  Plaintiff's introduction is the
22  equivalent of telling baseball fans that "the only dessert offering served at the concession stands
23  is cotton candy" and that "enjoying dessert is an important part of many people's experiences at
24  baseball games" but then asking them their opinions on the available food selections.
25  Obviously, the inclusion of that introductory information impacts the responses people will
26  provide.

27  Likewise, Plaintiff's emphasis of certain facts before its independent survey necessarily
28  taints the responses–indeed, Plaintiff's introduction did not merely state objectively that there

are two wheelchair accessible seats out of 3,733, but instead said there were "<u>only 2</u>" such seats. This phrasing and emphasis certainly suggests a conclusion that this number is insufficient. As a result, survey respondents were likely influenced by the introduction and were more likely to have responded negatively to their levels of satisfaction with Angels' Stadium than if they had not read such a biased introduction before the survey.

Finally, the Court has deep concerns with the unreliability of many of the declarations completed by Plaintiff's counsel's law clerks and paralegals. Many such declarations were unsigned, or were not even written by the declarants themselves, but were recounted by memory of counsel's staff after speaking with declarants. *See, e.g.* Declaration of Antoine Pitts ("Pitts Decl."), ¶ 12 (referencing a phone conversation between a law clerk and a "Man From Avalon California").[3] Though Plaintiff is not obligated to comply with Federal Rules of Evidence for its evidence in support of class certification, much of the evidence submitted lack any indicia of reliability. The Court also does not find it appropriate to find class certification on the basis of such unreliable, hearsay-based declarations. Therefore, the Court declines to consider any evidence submitted by Plaintiff that comes by way of an unsigned declaration or of a recollection of counsel or its staff.

As for the remaining supplemental evidence submitted by Plaintiff by way of signed declarations, the Court does not exclude it entirely but affords it diminished weight given the circumstances under which it was collected. Though Defendants' counsel insisted that such evidence must be excluded, the plain and simple truth is that such evidence certainly lends further support to what the Court already believed was a sufficient showing of numerosity. To exclude all of Plaintiff's supplemental evidence altogether would be to undercut the likelihood of a class numerosity which the Court already believed existed and now has a stronger basis for finding.

---

[3] The Court by no means intends to discredit or disrespect the undoubtedly hard work conducted by counsel's staff--and law clerks in particular--to obtain the supplemental support for Plaintiff's Motion. Nonetheless, the Court will not grant class certification on reliance of such unsubstantiated and unreliable evidence.

13

Defendants also challenge the sufficiency of the declarations that the Court does consider, relying heavily on *Celano v. Marriot Int'l, Inc.* 242 F.R.D. 544 (N.D. Cal. 2007). In that case, the court found that declarations from 21 individuals who had been unable to play golf in a hotel were insufficient to establish numerosity. *Id.* at 549. But part of the court's reluctance to rely upon the statistical data supplied by the plaintiff in that case had to do with the fact that the golf course at issue was a "high-end" one, so there was little reason to believe that people with disabilities would necessarily choose to play there. *Id.* Furthermore, the court in *Celano* distinguished its finding from the *Arnold* case, which found statistical, speculative data sufficient in establishing numerosity in a suit involving accessibility of a movie theater because "movie-going is a more affordable and widespread activity than golf . . . ." *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal.1994).

This Court believes that attending a baseball game is more akin to attending a movie than it is to going to a golf course. Baseball is often referenced as America's favorite past-time, and given that Plaintiff's class includes future attendees, it is reasonable to presume that many wheelchair-using baseball fans will emerge as future class members based on the statistical evidence provided by Plaintiff through the shared survey and, to a limited extent, Plaintiff's supplemental data. Therefore, like the court in *Arnold* noted, "[b]y the very nature of this class, its members are unknown and cannot be readily identified" and the numerosity factor can be met based on statistical, speculative evidence.

Upon careful consideration of the issued raised above, the Court finds that Plaintiff has demonstrated numerosity for purposes of class certification. The declarations submitted–albeit not all of them given equal weight by this Court–show that numerosity has been established. This is especially true in light of the fact that numerosity requirements are often "relaxed" when only injunctive or declaratory relief is sought. *See Sueoka v. U.S.*, 101 Fed. Appx. 649, 653 (9th Cir. 2004) (quoting 5 Moor's Federal Practice § 23.22[3][b]) (finding that a district court abused its discretion in not finding sufficient numerosity). Given the fact that the data sampled did not represent the entire time-frame for class membership, the Court is confident that many more class members will emerge. Furthermore, the Court reemphasizes the fact that the nature of the

request sought in this action–injunctive relief, rather than damages of any sort–as well as the likelihood of broad diversity of geographical locations of class members, who may have attended games while visiting the Los Angeles area–weigh in favor of finding an impracticability of joinder that is sufficient to establish numerosity. *See Jordan*, 669 F.2d at 1319. Therefore, Plaintiff has successfully demonstrated numerosity.

**B.      Commonality**

Commonality exists where there are "questions of law or fact common to the class." Fed. R. Civ. P. 23 (a)(2). This commonality analysis is less rigorous than the companion requirement of Rule 23(b)(3). *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998); *Local Joint Exec. Bd. of Culinary Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1162 n.3 (9th Cir. 2001). "All questions of fact and law need not be common to satisfy this rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019; *accord Staton v. Boeing Co.*, 327 F.3d 983, 952 (9th Cir. 2003).

Defendants did not challenge the commonality prong at this stage. *See* Opp'n, at 6 n.1. Furthermore, the standard for commonality is easily met, since wheelchair users are likely to be affected in the same ways by a lack of access to appropriate seating. *See Arnold*, 158 F.R.D. at 449 ("Inadequate wheelchair accommodations at particular theaters are very likely to affect all wheelchair-users in the same way."). Since the suit challenges Defendants' policies towards wheelchair users, common issues will undoubtedly be at issue. More specifically, Plaintiff has raised a number of issues that will be common to all class members: the Stadium's failure to comply with federal guidelines about the placement of wheelchair seating; a failure by Defendants to allow for wheelchair users and their companions to purchase or exchange tickets to accommodate them; and a failure to train ushers appropriately to accommodate wheelchair users.

**C.      Typicality**

Typicality under Rule 23(a)(3) means that the class representative's claims must be typical of the class. "The purpose of the typicality requirement is to assure that the interest of

1 the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*,
2 976 F.2d 497, 508 (9th Cir. 1992). "Under the rule's permissive standards, the representative
3 claims are 'typical' if they are reasonably co-extensive with those of absent class members; they
4 need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Once again, Defendants do not challenge the typicality of Plaintiff's claims. Opp'n, 7, n.1. Here, typicality is met as well, given that Plaintiff is challenging the accommodations of the Stadium and the Stadium's uniform policies towards wheelchair-users. *See Arnold*, 158 F.R.D. at 450 (noting that in a public accommodations suit involving the "legal permissibility of architectural design features . . . any class member could satisfy the typicality requirement for class representation").

### D. Adequacy of Representation

An adequate representative is one who "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Due process requires that absent class members have an adequate representative. *See Hansberry v. Lee*, 311 U.S. 32, 43, 61 S. Ct. 115 (1940). A representative is adequate where (a) there is no conflict of interest between the representative and its counsel and absent class members, and (b) the representative and its counsel will "pursue the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 120 (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

Defendants raise no objection to the adequacy of the representation. Opp'n, at 6, n.1. As the Declaration of V. James DeSimone establishes, Plaintiff's counsel is both experienced in disability and discrimination cases, as well as class action lawsuits–and recently was honored as one of the Top Ten Employment Attorneys. *See* DeSimone Declaration at ¶ 4-13. Though this is not an employment case, the Court believes that Plaintiff's choice of counsel is adequate.

### E. Fed. R. Civ. P. 23(b)

Plaintiff asserts that he meets the requirements under Rule 23(b) through Rule 23(b)(2). Fed. R. Civ. P. 23(b)(2), which requires a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole . . . ." Fed. R. Civ. P. 23(b)(2). Plaintiff alleges that Defendants have failed to comply with the ADA, and that they have refused to comply with federal guidelines; have refused to create an appropriate system through which wheelchair users can purchase or exchange tickets on the team's website; and have maintained a policy of not adequately training their ushers about proper accommodations for wheelchair users at the Stadium. Plaintiff therefore has requested an injunction and declaratory relief to force Defendants to comply with federal and state requirements to accommodate persons with disabilities. Plaintiff's allegations about Defendants apply to all class members.

Defendants argue that Plaintiff has not complied with Rule 23(b)(2) because Plaintiff could instead bring an individual action for injunctive relief, rather than a class action. The Court declines to hold that plaintiffs are precluded from bringing class actions simply because they request injunctive relief alone. Indeed, to do so would deem moot the language of Rule 23(b)(2)-- which specifically address class action lawsuits requesting injunctive relief. Indeed, class certification is not withheld just because a class action is not the only means through which the litigation could proceed. *See Park v. Ralph's Grocery Co.*, 254 F.R.D. 112, 123 (C.D. Cal. 2008) (responding to a defendant's argument that class treatment would "add no benefit" to the case by "refus[ing] to deny certification simply because class adjudication is not strictly necessary in this case"); *see also Disability Rights Council of Greater Washington v. Washington Metropolitan Area Transit Authority*, 239 F.R.D. 9, 23 (D.D.C. 2006.) ("As numerous courts have observed, whether certification is "necessary" is not a question Rule 23 directs the courts to consider."); *Littlewolf v. Hodel*, 681 F. Supp. 929 (D.D.C.1988) (finding that "the idea that a class may be certified only if 'necessary' flies in the face of the Federal Rules").

**F.  Class Counsel**

For the reasons stated above under Adequacy of Representation, the Court designates Plaintiff's counsel at Schonbrun Desimone Seplow Harris & Hoffman LLP as class counsel pursuant to Rule 23(g)(1)(A). The Rule requires courts to consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in

handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A). Counsel appear to have diligently pursued this action and have met with experts and class members in order to investigate the claim. *See* DeSimone Decl. As described above, counsel has been recognized for its experience in class actions, thus earning the Court's confidence as to both the second and third prongs of the Rule. *Id.* at ¶¶ 5-10. Finally, counsel assures the Court that it has already and will continue to commit adequate resources to the pursuit of this litigation. *Id.* at ¶¶ 19-23.

### IV. DISPOSITION

For the reasons stated above, the Court holds that:

1. Certification is GRANTED. The class shall be defined as: Any wheelchair user who has attended or will attend a baseball game at the Stadium but who has been or will be denied equal access to wheelchair accessible seating, amenities, privileges, services and facilities of the Stadium on account of his/her disability.
2. Plaintiff's counsel of Schonbrun Desimone Seplow Harris & Hoffman LLP is designated as class counsel.

IT IS SO ORDERED.

DATED: June 30, 2011

_____
DAVID O. CARTER
United States District Judge

18