1  V. James DeSimone, State Bar No. 119668
   Michael D. Seplow, State Bar No. 150183
2  Amanda R. Canning, State Bar No. 245634
   SCHONBRUN DESIMONE SEPLOW
3  HARRIS & HOFFMAN LLP
   723 Ocean Front Walk
4  Venice, California 90291
   Telephone:  (310) 396-0731
5  Facsimile:  (310) 399-7040
   E-Mail:  vdesimone@sdshh.com
6            mseplow@gmailcom
             acanning@sdshh.com
7

8  Attorneys for Plaintiff
   J. PAUL CHARLEBOIS
9

10

11
                    UNITED STATES DISTRICT COURT
12
                   CENTRAL DISTRICT OF CALIFORNIA
13

14
   J. PAUL CHARLEBOIS,              )   Case No. SACV10-853-DOC (ANx)
15                                  )
                                    )   Assigned for All Purposes To:
16                                  )   Judge David O. Carter
                                    )
17         Plaintiff,               )   **NOTICE OF MOTION AND**
      vs.                           )   **MOTION FOR FINAL**
18                                  )   **APPROVAL OF ATTORNEYS**
                                    )   **FEES, COSTS AND**
19 ANGELS BASEBALL LP, CITY OF      )   **ENHANCEMENT FEES,**
   ANAHEIM, and DOES 1 THROUGH 10   )   **MEMORANDUM OF POINTS**
20 inclusive,,                      )   **AND AUTHORITIES IN SUPPORT**
                                    )   **THEREOF; AND**
21         Defendants.              )   **DECLARATIONS IN SUPPORT**
                                    )   **THEREOF FILED UNDER**
22                                  )   **SEPARATE COVER**
                                    )
23                                  )   Date:  May 10, 2012
                                    )   Time:  8:30 a.m.
24 _____ )   Dept:  9-D

25

26

27

28

**TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 10, 2012 at 8:30 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Central District of California, Courtroom 9-D, Plaintiff J. Paul Charlebois, on behalf of the certified class of wheelchair users who have attended or will attend an Angels baseball game, will and hereby does move this Court for an Order Awarding Attorneys' Fees, Costs, and Enhancement Fees.

This Motion is made pursuant to Federal Rule of Civil Procedure 23(e). The motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, Declarations of V. James DeSimone, Amanda R. Canning, J. Paul Charlebois, Carol Sobel, Aashish Desai, and Shawna Parks and Exhibits filed herewith, the pleading and papers filed in this action, as well as any further documentation submitted to the Court and oral argument of counsel.

DATED: April 12, 2012                SCHONBRUN DESIMONE SEPLOW
                                     HARRIS HOFFMAN & HARRISON LLP


                                     _Amanda R. Canning_
                                     V. James Desimone
                                     Michael D. Seplow
                                     Amanda R. Canning
                                     Attorneys for Plaintiff
                                     J. Paul Charlebois

# **TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION....................................................................1

II.   FACTUAL AND LITIGATION HISTORY...............................2

    A.   Factual Background..........................................................2

    B.   The Litigation...................................................................2

        i.   Motion for Class Certification...............................4

        ii.  Further Litigation and Mediation...........................6

    C.   The Settlement Agreement Achieves the Critical
        Goals of Plaintiff's Lawsuit and Ensures that
        Wheelchair Users Will Have Improved Access
        To Angel Stadium.............................................................8

III.  CLASS COUNSEL ARE ENTITLED TO
    REASONABLE ATTORNEYS FEES AND COSTS..................10

    A.   Class Counsel Are Entitled To Attorneys'
        Fees and Costs Under the Settlement
        Agreement......................................................................10

    B.   Class Counsel Are Entitled to Attorneys'
        Fees and Costs Under Applicable Law...........................11

IV.   THE LODESTAR AMOUNT SOUGHT BY
    CLASS COUNSEL IS REASONABLE...................................12

    A.   The Number of Hours Claimed is Reasonable
        And Well-Documented...................................................14

        i.   Class Counsel Pursued this Case
            Efficiently and the Hours Claimed
            are Reasonable......................................................14

        ii.  Plaintiff's Counsel Has Provided
            Detailed Documentation of Their
            Time......................................................................17

i

## **TABLE OF CONTENTS (cont.)**

Page(s)

  B. The Hourly Rates Claimed Are Comparable
   to Other Local Attorneys' Rates and Reflect
   the Risks Inherent in the Litigation...................................17

  C. In the Exercise of Billing Judgment, Class
   Counsel Has Discounted its Lodestar Total
   By More than 17 Percent...............................................20

V. CLASS COUNSEL ARE ENTITLED TO A
  MULTIPLIER BASED ON THE CONTINGENT
  RISK OF THE LITIGATION, THE DIFFICULTY
  OF THE CASE, AND THE RESULTS OBTAINED...................20

VI. CLASS COUNSEL ARE ENTITLED TO RECOVER
  OUT-OF-POCKET COSTS.................................................22

VII. PLAINTIFF IS ENTITLED TO AN ENHANCEMENT
  FEE FOR LITIGATING THIS CASE....................................22

VIII. THE FEE AWARD SHOULD INCLUDE FEES
  FOR TIME SPENT ON THE FEE MOTION.............................24

IX. REQUESTED FEES AND COSTS......................................24

X. CONCLUSION.............................................................25

# TABLE OF AUTHORITIES
## FEDERAL CASES

Page(s)

*Ballen v. City of Redmond*
  466 F.3d 736 (9th Cir.2006)..................................................................13

*Barrios v. Cal. Interscholastic Federation*
  277 F.3d 1128 (9th Cir. 2002)..........................................................10, 11

*Berberena v. Coler*
  753 F.2d 629 (7th Cir. 1985) .............................................................17

*Blum v. Stenson*
  465 U.S. 886 (1984)...........................................................................18

*Camacho v. Bridgeport Fin., Inc.*
  523 F.3d 973 (9th Cir.2008)................................................................24

*Caudle v. Bristol Optical Co., Inc.*
  224 F.3d 1014 (9th Cir. 2000)............................................................12

*City of Riverside v. Rivera*
  477 U.S. 561 (1986)............................................................................13

*Clark v. City of Los Angeles*
  803 F.2d 987 (9th Cir.1986)...............................................................24

*Dennis v. Chang*
  611 F.2d 1302 (9th Cir. 1980)............................................................17

*Dornberger v. Metropolitan Life Ins. Co.*
  203 F.R.D. 118 (S.D.N.Y. 2001)....................................................23-24

*Doyle et. al. v. AT&T et. al.*
  No. CV 08-1275 (JAH) (S.D.Cal.  2010)............................................23

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*
  137 F.R.D. 240 (S.D. Ohio 1991)......................................................22

*Hensley v. Eckerhart*
  461 U.S. 424, (1983)..................................................................12-13, 17

*In re Conseco Life Insurance Co. Cost of Insurance Litigation*
  2007 WL 3170134...............................................................................23

*In re Dunn & Bradstreet Credit Services Consumer Litigation*
  130 F.R.D. 366 (S.D. Ohio 1990).......................................................23

*In re Tyco Int'l. Ltd Multidistrict Litigation*
  535 F.Supp.2d 249 (2007)............................................................14, 15

*Jankey v. Poop Deck*
    537 F.3d 1122 (9th Cir. 2008)......................................................11

*Kerr v. Screen Extras Guild, Inc.*
    526 F.2d 67 (9th Cir. 1975)........................................................12

*McKenzie v. Kennickell*
    645 F. Supp. 437(D.D.C. 1986) ..................................................17

*Missouri v. Jenkins*
    491 U.S. 274 (1989).................................................................18

*Moreno v. City of Sacramento*
    534 F.3d 1106 (9th Cir. 2008).....................................................15

*Newman v. Piggy Park Enters*
    390 U.S. 400 (1968).................................................................11

*Pa. v. Del. Valley Citizens Council for Clean Air*
    478 U.S. 546 (1986)..............................................................12-13

*Perkins v. Mobile Housing Board*
    847 F.2d 735 (11th Cir. 1988)................................................15, 17

*Richard S. v. Dep't of Dev. Servs. of State of Cal.*
    317 F.3d 1080 (9th Cir. 2003).....................................................11

*Rodriguez v. W. Publ'g Corp.*
    563 F.3d 948 (9th Cir. 2009)......................................................23

*Shoff, et al. v. AT&T et. al.*
    Case No. CV 07-3289 DSF (AGRx) (C.D.Cal. 2008)..........................23

*Thompson v. Gomez*
    45 F.3d 1365 (9th Cir.1995)........................................................24

*Ustrak v. Fairman*
    851 F.2d 983 (7th Cir. 1988).......................................................13

*Van Bronkhorst v. Safeco Corp.*
    529 F.2d 943 (9th Cir. 1976).......................................................19

*Van Vranken v. Atlantic Richfield Co.*
    901 F.Supp. 294 (N.D.Cal. 1995)..................................................23

*White v. Experian Information Solutions, Inc.*
    2011 WL 2971957 (C.D.Cal. 2011)................................................14

STATE CASES

*Church of Scientology v. Wollersheim*
    42 Cal. App. 4th 628 (1996).......................................................21

*Estrada v. FedEx Ground Package System, Inc.*
    154 Cal. App. 4th 1, (2007).......................................................12

*Hull v. Rossi*
    13 Cal.App.4th 1763 (1993)……………………………………...11

*Ketchum v. Moses*
    24 Cal. 4th 1122 (2001)……………………………………20-21

*Lealao v. Beneficial Cal., Inc.*
    82 Cal. App. 4th 19 (2000)…………………………………..21

*Olney v. Municipal Court*
    133 Cal. App. 3d 455 (1982)………………………………....11

*San Bernardino Valley Audubon Soc'y v. County of San Bernardino*
    155 Cal. App. 3d 738 (1984)……………………...…13-14, 21

*Satrap v. Pac. Gas & Elec. Co.*
    42 Cal. App. 4th 72 (1996)…………………………………..12

*Serrano v. Priest* ("*Serrano III*")
    20 Cal. 3d 25 (1977)…………………………………………14

*Serrano v. Unruh* ("*Serrano IV*")
    32 Cal.3d 621 (1982)………………………………....13-14, 18

*Wershba v. Apple Computer, Inc.*
    91 Cal. App. 4th 224 (2001)…………………………………21

*Woodland Hills Residents Ass'n v. City Council of L.A.*
    23 Cal. 3d 917 (1979)…………………………………13, 21

## STATUTES

28 C.F.R.
    § 36.505…………………………………………………22

42 U.S.C.
    § 12205……………………………………………...11, 22

Cal. Civ. Code
    § 55……………………………………………………11

Cal. Civ. Proc. Code
    § 1021.5………………………………………………11-12

Fed. R Civ. Pro.
    Rule 23(a)(1)……………………………………………5
    Rule 23(c)(1)(B) and (g)………………………………16
    Rule 23(g)(1)(ii)&(iv)…………………………………16
    Rule 30(b)(6)……………………………………………6,7

## OTHER AUTHORITIES

*Newberg on Class Actions*, (4th Ed.) 2010……………………………19

## I. INTRODUCTION

The central goal of this case was to ensure that wheelchair users have the same opportunity to attend and enjoy a baseball game at Angel Stadium of Anaheim ("the Stadium") as non-disabled fans.   As a result of the diligent efforts by Plaintiff's counsel, Schonbrun DeSimone Seplow Harris Hoffman & Harrison ("SDSHHH" or "Class Counsel"), including over two years of investigation, litigation and negotiations, this goal has been achieved.   The settlement agreement in this case provides lasting tangible benefits to the certified class including:

1. Reduced cost wheelchair accessible seating in prime locations;
2. Increased wheelchair accessible seating with in-seat food and beverage services;
3. Additional wheelchair accessible seating in select areas of Angel Stadium;
4. Allowing class members to purchase wheelchair accessible seating directly on-line; and
5. Increased training for Angels baseball staff regarding disability issues.

Prior to the litigation, wheelchair users had fewer affordable seating options, no ability to purchase tickets online (making it extremely inconvenient for disabled fans to purchase seats), and virtually no option whatsoever of purchasing a ticket with the amenities of in-seat food and beverage service.   Further, there were only two wheelchair accessible seats on the premier Club Level and wheelchair users were relegated to areas of the Stadium with poor sight lines.   Now, as a result of the diligent efforts of Class Counsel, wheelchair using baseball fans have a comparable opportunity to enjoy baseball at Angel Stadium as other fans.

Pursuant to the terms of the settlement agreement and applicable law, Class Counsel are entitled to an award of reasonable attorneys for their diligent work in achieving this excellent result.   Class Counsel submit that their fee request is fair and reasonable in light of: (1) the enormous benefits to the Class Members by providing increased access to Angel Stadium for wheelchair users; (2) the substantial time and

1  effort expended by Class Counsel in order to reach the settlement; (3) the litigation

2  risks and complexity of the case; (4) the experience and diligence of counsel; and (5)

3  the fees commonly awarded in cases of this type.  Therefore, Class Counsel

4  respectfully petitions the Court for an award of attorneys' fees and costs in the

5  amount of $1,116,660.96 (recognizing that the settlement agreement between the

6  parties caps Class Counsel's fees and costs at $725,000), as well as an enhancement

7  fee in the amount of $18,000 for Class Representative J. Paul Charlesbois.

8  **II. FACTUAL AND LITIGATION HISTORY**

9      **A. Factual Background**

10      This case arose out of an incident where Plaintiff J. Paul Charlebois was

11  unable to obtain wheelchair accessible seating at Angels Baseball Stadium on the

12  Club Level (the level in which he had a ticket), nor was he able to enjoy the

13  amenities of in-seat food and beverage services provided to other ticket holders in the

14  Club Level section.  Through further investigation, it became clear that Mr.

15  Charlebois' experience at the Stadium was indicative of a larger problem inherent in

16  the structural design of Angel Stadium, despite having undergone a $117 million

17  renovation unveiled in 1999.  However, when the Stadium was refurbished, it did not

18  comply with the Americans with Disabilities Act ("ADA").  Primarily, wheelchair

19  accessible seats were not adequately dispersed throughout the Stadium and offered

20  compromised views of the game.   Moreover, there were no wheelchair accessible

21  seats with in-seat dining save for the prohibitively expensive Diamond Club seats.

22  Access to tickets sales were also not comparable as wheelchair accessible and

23  companion seating could not be purchased directly on-line, as could other tickets for

24  all other seating throughout the stadium.  These deficiencies were compounded by

25  the fact that Angels' employees who interact with wheelchair users were not always

26  adequately trained.

27      **B. The Litigation**

28      On October 21, 2009, Plaintiff's counsel wrote a detailed letter to Angels

1    Baseball and the City of Anaheim explaining Mr. Charlebois' experiences and the

2    issues of inaccessibility at Angel Stadium. *See* Declaration of V. James DeSimone

3    ("DeSimone Decl.") at ¶ 3. After Defendants received Plaintiff's letter, the parties

4    exchanged further correspondence and discussed the possibility of an informal

5    resolution on numerous occasions; however, never with any progress. *Id.* at ¶ 3.

6    Despite Plaintiff's entitlement to recovery on an individual basis, Plaintiff's counsel

7    had authority from their client, Mr. Charlebois, to pursue class-based injunctive relief

8    in order to achieve widespread benefits for wheelchair users. *Id.* at ¶ 3. For months,

9    Defendants promised to provide documents related to the issues in this case

10    including documents reflecting the number and placement of wheelchair accessible

11    seats, the amenities provided thereto and the methods of purchase of accessible seats.

12    *Id.* at ¶ 3. However, Angel Baseball's promises to provide documents amounted

13    only to delay and the parties did not have sufficient documentation or information to

14    engage in meaningful informal discussions. *Id.* at ¶ 3. After receiving nothing of

15    substance after numerous requests, Plaintiff was forced to file this lawsuit. *Id.* at ¶ 3.

16    On June 15, 2010, Plaintiff filed this action against Defendants, alleging violations of

17    federal and state disabilities laws, seeking injunctive relief only. *Id.* at ¶ 3.

18       After filing the complaint, Class Counsel propounded multiple rounds of

19    written discovery, including three sets of interrogatories and two sets of document

20    demands, noticed depositions for persons most knowledgeable, and undertook

21    preparing a Motion for Class Certification. *Id.* at ¶4. Because the Stadium had been

22    renovated under different ownership and other vendors controlled ticket sales, Class

23    Counsel also had to subpoena documents from multiple third parties. *Id.* at ¶ 4.

24    Plaintiff's expert, architect Mark J. Mazz, also inspected the Stadium and prepared a

25    comprehensive report identifying all areas of the Stadium that were out of

26    compliance with the ADA as it related to wheelchair accessible seating. Mr. Mazz

27    supplied suggestions on how the Stadium could come within compliance with the

28    ADA, including suggestions that entailed structural renovation of the Stadium. *Id.* at

¶ 5.

Following Mr. Mazz' site inspection, and at Defendants' request, Plaintiff also provided a comprehensive settlement proposal to resolve the matter that identified the areas of non-compliance in the Stadium and presented a solution for the number and location of seats that would need to be added in each section of the Stadium. *Id.* at ¶ 6. Defendants' response indicated that despite Defendants' representation that they were interested in settling the matter, they were steadfast in their refusal to substantially increase the number of wheelchair accessible seats or to provide a proportionate number of wheelchair accessible seats with in-seat dining. Indeed, Defendants offered only four additional wheelchair accessible seats in the Knothole Club (which is located in the stands behind right field). It was clear that the parties were literally in different ball parks and Plaintiff would need to continue the litigation in order to achieve a fair result for the class. *Id.* at ¶ 6.

    *i.  Motion for Class Certification*

On November 18, 2010, Plaintiff filed a Motion for Class Certification. Plaintiff's motion included two expert reports, one prepared by statistician Sean Chasworth to establish the numerosity of the class, as well as the comprehensive report prepared by Mr. Mazz. *Id.* at ¶ 7. These reports helped to establish that the requisite criteria for a class action was satisfied and that the common issues of law and fact substantially predominated over individual issues. Based upon census and Major League Baseball data, Plaintiff's statistician estimated that there were, at a minimum, several thousand wheelchair users in the greater Southern California area who might likely attend a game at Angel Stadium. The architect's report identified the Stadium's extensive violations of the ADA for wheelchair accessible seating and possible solutions to address the problem. *Id.* at ¶ 7.

On January 24, 2011, the Court heard Plaintiff's motion and issued a tentative decision in Plaintiff's favor, certifying the class. *Id.* at ¶ 8. However, at the hearing on the Motion, the Court expressed concerns about the numerosity of the class, called

1  the issue a "close call," and requested more data to ascertain whether Mr. Charlebois'

2  experience was an isolated incident or whether there existed widespread concerns

3  among wheelchair users and their companions.  Accordingly, the parties agreed to

4  determine whether additional evidence that the class was sufficiently numerous

5  under FRCP Rule 23(a)(1) could be obtained and a joint outreach effort to survey

6  putative class members ensued.  The Disability Rights Legal Center ("DRLC")

7  agreed to administer a joint questionnaire surveying the experiences of wheelchair

8  users who had attended a baseball game at Angel Stadium within the prior two

9  seasons.  Plaintiff's counsel also conducted independent outreach by contacting

10  community organizations that assist and represent users of wheelchairs, and spoke to

11  class members as a result of that outreach.  *Id.* at ¶ 8.

12      Despite counsel's agreement to engage in outreach efforts to members of the

13  then putative class, Defendants repeatedly engaged in delay and obstructive tactics

14  which prolonged the dissemination of a joint survey by several months.  *Id.* at ¶ 9.

15  Class Counsel was prompt in drafting the survey and providing revisions to

16  Defendants, while Defendants required frequent prodding to take action on the

17  survey.  On several occasions, Defendants altered questions after an agreement had

18  been reached, further delaying the dissemination of the survey.  Further, contrary to

19  the weight of authority entitling Class Counsel to communicate with putative class

20  members as a matter of right, Defendants attempted to limit Class Counsel's ability

21  to communicate with putative class members who voluntarily provided contact

22  information on the joint survey by refusing to supply any place for individuals to put

23  contact information.  Defendants further tried to impose extremely short deadlines

24  for survey respondents to return their surveys and refused to agree to allow a mailing

25  of the survey to wheelchair ticket purchasers for whom there was no email address.

26  Plaintiff's counsel, V. James DeSimone, met in person with opposing counsel and

27  Angels in-house counsel, David Cohen, in an effort to resolve these differences but

28  was unsuccessful.  As a result, Class Counsel was forced on two occasions in March

5

1  2011 to file ex parte applications to compel with this Court.  Both applications were

2  successful.  *Id.* at ¶ 9.

3       After these significant and unnecessary delays, the survey was administered on

4  April 15, 2011, by email and mail, to approximately 2,200 individuals who had

5  purchased wheelchair accessible seats to Angel Stadium within the prior two baseball

6  seasons.  A total of 206 individuals responded.  *Id.* at ¶ 10.  Once Class Counsel

7  obtained the survey responses, Class Counsel undertook to contact all respondents

8  who provided contact information and who had indicated they had any concern or

9  dissatisfaction with wheelchair accessible seating, amenities or accessible ticket

10  purchases.  Mr. DeSimone, Ms. Canning, and Mr. Feldman spoke directly with class

11  members; Mr. DeSimone and Ms. Canning also managed and supervised four law

12  clerks and paralegals who spoke with class members and assisted in drafting

13  declarations on their behalf.  *Id.* at ¶ 10.

14       On June 13, 2011, Plaintiff filed a supplemental brief on class numerosity

15  which included declarations and statements from 44 wheelchair user class members

16  cataloging the problems wheelchair users have experienced at Angel Stadium.  *Id.* at

17  ¶ 11.  These outreach efforts were critical: Class members' dissatisfaction about the

18  availability and dispersion of wheelchair accessible seating at the Stadium as well as

19  the lack of online ticket sales validated the lawsuits' contentions that the Stadium

20  was in direct violation of the ADA.  On June 30, 2011, the Court found that the class

21  was sufficiently numerous to merit certification, appointed SDSHHH as Class

22  Counsel and named J. Paul Charlebois the Class Representative.  *Id.* at ¶ 12.

23       *ii. Further Litigation and Mediation*

24       Class Counsel were also compelled to engage in extraordinary efforts to

25  depose Defendants' witnesses with knowledge of their practices.  *Id.* at ¶ 13.  In all,

26  Class Counsel was forced to issue the F.R.C.P. Rule 30(b)(6) deposition notice seven

27  times to the Angels designee and four times to the City of Anaheim designee, and

28  had to engage in substantial correspondence and numerous telephone calls to press

1  Defendants' counsel to produce these witnesses. *Id.* at ¶ 13. Even then, Defendants'

2  counsel repeatedly sought to move agreed-upon deposition dates. When a Rule

3  30(b)(6) designee was finally produced, Defendants' counsel failed to produce an

4  individual knowledgeable about all Rule 30(b)(6) topics that were noticed in the

5  depositions. Class counsel was then forces to issue additional Rule 30(b)(6) notices

6  to obtain the missing information. *Id.* at ¶ 14.

7         It was not until Plaintiff met and conferred on a summary judgment motion

8  that the parties reached an agreement to attend a mediation. *Id.* at ¶ 15. Class

9  Counsel prepared an affirmative motion for summary judgment in order to

10  convincingly demonstrate that the Stadium was out of compliance with the ADA and

11  that there were not material issues in dispute bearing on the issue of liability. These

12  efforts required extensive work to draft the motion and supporting declarations. In

13  order to prompt negotiations at the mediation, Class Counsel provided the mediator

14  with a draft of Plaintiff's motion. Class Counsel was prepared to file the motion by

15  the motion cut off deadline of October 31, 2011 in the event the private mediation

16  was unsuccessful. *Id.* at ¶ 15.

17         On October 21, 2011, the parties participated in a full day of private mediation

18  but were unable to reach a settlement. *Id.* at ¶ 16. Thereafter, direct negotiations

19  ensued between Class Counsel James DeSimone and Brent Giddens, Defendants'

20  counsel, David Cohen, Angels Baseball in-house counsel, Molly Jolly, Angels Vice

21  President of Finance and Administration, and, eventually, John Carpino, the

22  President of Angels baseball. After a week of these direct negotiations between Mr.

23  DeSimone and Angels Baseball attorneys and executives, involving a number of

24  telephone conferences, correspondences, and exchanges of settlement drafts, the

25  parties reached an agreement to settle the Action ("the Settlement") and signed a

26  Memorandum of Agreement ("Agreement" or "MOA") on October 28, 2011 which

27  reflected the agreement to fully resolve the case. *Id.* at ¶ 17.

28         Consistent with the Agreement, Class Counsel prepared and filed a Motion for

1   Preliminary Approval. *Id.* at ¶ 19. Prior to that, a Notice of Class Action Settlement
2   to class members was prepared by Plaintiff's Counsel and extensive negotiations
3   ensued over its content. Once again, it took substantial time for Angels Baseball to
4   respond to the Notice, and negotiations over changes were prolonged as each change
5   seemingly had to be approved by several layers of Angels Baseball bureaucracy. *Id.*
6   at ¶ 19.

7       During the negotiations pertaining to the class notice, Defendants sought to re-
8   negotiate an issue that had been previously agreed upon by the parties pertaining to
9   the verification process for first-time ticket purchasers. *See* DeSimone Decl at ¶ 20.
10  The reopening of a settled term required much time and attention of Class Counsel,
11  required further face-to-face negotiations between Class Counsel and in-house
12  counsel for the Angels, and resulted in the advancing of the Pre-Trial Conference.
13  Ultimately, the parties reached an agreement, which was read into the Court record
14  on February 23 and March 5, 2012. *Id.* at ¶ 20.

15      On March 5, 2012, the Court granted Plaintiff's Motion for Preliminary
16  Approval and set a schedule for notice to the class and final approval. *Id.* at ¶ 21. In
17  March 2012, Class Counsel worked with the Class Action Administrator and other
18  nonprofit organizations to ensure that Class Members received proper notice of the
19  settlement. No class members have objected to the settlement. During this time,
20  Class Counsel has also presented the Court with a Status Report as well as prepared
21  the instant Motion for Attorneys Fees, Costs and Enhancement Fees. *Id.* at ¶ 21.

22  **C. The Settlement Agreement Achieves the Critical Goals of Plaintiff's**
23  **Lawsuit and Ensures that Wheelchair Users Will Have Improved**
24  **Access to Angel Stadium.**

25  The parties' settlement agreement will result in comprehensive modifications
26  of seating and amenities for wheelchair accessible seating in Angel Stadium,
27  equivalent methods of ticket purchase for wheelchair users and non-wheelchair users
28

1    alike, and re-training of Angels Baseball employees.

2          The provisions of the settlement include:

3    • Wheelchair accessible and companion seats in the Diamond Club, the area

4      closest to the playing field at Angel Stadium behind home plate, will be sold at

5      a rate of $50.00 a ticket (discounted from the previous rate of $150.00 per

6      ticket for the existing twenty-four seats) to those who pre-qualify as

7      wheelchair users and any future ticket increases will have to be proportionate

8      to the average ticket increase in the Club Level.

9

10   • Two additional wheelchair accessible plus two companion seats will be added

11     within the current configuration of the Diamond Club.   All seating in the

12     Diamond Club provides in-seat dining service.

13   • Angels Baseball will add in-seat food and beverage service, similar to that

14     provided on the Club level, to thirty-two wheelchair accessible plus thirty-two

15     existing companion seats on the Terrace Level.

16   • Angels Baseball will add an additional four wheelchair accessible and four

17     companion seats to the Knothole Club which is on the Club Level.

18

19   • All wheelchair accessible seating, including the discounted Diamond Club

20     seats, will be sold directly on line.

21   • Angels Baseball will train, in conjunction with the Disability Legal Rights

22     Center all of its ushers, ticket sales and customer service representatives,

23     regarding wheelchair accessible seating and pricing options, including

24     information concerning the location of wheelchair accessible seating with in-

25     seat food and beverage services.

26

27   • Any price increases for wheelchair accessible seating must be commensurate

28     with price increases for comparable seating at Angel Stadium.

1   These terms, once fully implemented, will improve Angel Stadium and Angels

2   Baseball ticket purchase by implementing extensive modifications designed to ensure

3   that the seating, amenities, privileges, services and facilities of the Stadium are

4   comparably accessible to all individuals who utilize wheelchairs.

5   **III. CLASS COUNSEL ARE ENTITLED TO REASONABLE**

6   **ATTORNEYS FEES AND COSTS.**

7   **A. Class Counsel Are Entitled To Attorneys' Fees and Costs Under**

8   **the Settlement Agreement**

9   Under the terms of the settlement agreement, Defendants have agreed to pay

10  Class Counsel's attorneys fees and costs and Plaintiff's enhancement fee.[1]

11  According to the settlement, agreement, Class Counsel are entitled to an award of

12  attorneys fees and costs of between $296,000 and $725,000.  Because the parties

13  have not been able to reach an agreement as to the amount of attorneys' fees and

14  costs, the decision will be made by the District Court according to the procedure set

15  forth in Paragraph 7 of the Settlement Agreement, which provides:

16  Each Party's "Best Offer," Which shall mean the Angels' highest and the
    Plaintiff's lower offer on attorneys' fees and costs [], will be submitted to the

17  Judge by way of Plaintiff's Motin for Attorneys' Fees, Costs and

18  Enhancement. *The Motion will request that Judge Carter make an award in
    the amount of either Plaintiff's or Angels' "Best Offer".*  In the event the

19  Judge refuses to decide between the choices presented by the parties, the

20  parties agree to be bound by the Court's determination.  However, if the

21  Court's award is outside the range set by the Best Offers, the parties agree that
    the amount paid by Angels will be the Best Offer closest to the Court's award.

22  *See* (MOU ¶7, emphasis added).

23

24  To date, Defendants have offered no more than the bottom threshold of

25  $296,000 for Class Counsel's fees and costs.  As explained below, Class Counsel's

26  _____

27  [1] The Settlement Agreement also affords Plaintiff a legally enforceable instrument
    that makes him the prevailing party for purposes of this case. *See Barrios,* 277 F.3d
    at 1134 (holding that plaintiff was prevailing party because he entered into a

28  settlement agreement that was a legally enforceable instrument).

1   lodestar total exceeds the upper cap on counsel's fees (amounting to $1,116,660.96).

2   Given the beneficial and successful outcome of this matter, Class Counsel is entitled

3   to recover full attorneys' fees and costs.  Accordingly, the Court should award Class

4   Counsel its full attorneys' fees and costs, understanding that the Settlement

5   Agreement sets a maximum cap of $725,000.00.

6   **B. Class Counsel Are Entitled to Attorneys' Fees and Costs Under**

7   **Applicable Law.**

8   Class Counsel are entitled to receive attorneys' fees and costs under several

9   applicable state and federal statutes which allow prevailing plaintiffs to collect

10  attorneys' fees from defendants in disability discrimination cases.  *See* 42 U.S.C. §

11  12205, *see also* Cal. Civ. Code § 55.

12  It is well established that a "prevailing Plaintiff 'should ordinarily recover an

13  attorney's fee unless special circumstances would render such an award unjust.'"

14  *Newman v. Piggy Park Enters.*, 390 U.S. 400, 402 (1968)); *see also Barrios v. Cal.*

15  *Interscholastic Federation,* 277 F.3d 1128, 1135 (9th Cir. 2002) (ADA action). [2]  In

16  fact, courts have found it an abuse of discretion to deny fee awards to prevailing

17  parties who have satisfied the statutory criteria.  *Hull v. Rossi*, 13 Cal.App.4th 1763

18  (1993).

19  In addition, Plaintiff is entitled to recover reasonable attorneys' fees and costs

20  pursuant to Cal. Civ. Proc. Code Section 1021.5.  *See also Olney v. Municipal Court*,

21  133 Cal. App. 3d 455, 463-464 (1982) ("[A]n award … is appropriate when the cost

22  of the claimant's legal victory transcends his personal interest, that is, when the

23

24

25  [2] The Ninth Circuit has stated two requirements for an ADA plaintiff to be a
    prevailing party: "he must achieve a material alteration of the legal relationship of

26  the parties, and that alteration must be judicially sanctioned." *Jankey v. Poop Deck*,
    537 F.3d 1122 (9th Cir. 2008). The latter requirement may be met if a party enters

27  into a legally enforceable agreement with the defendant. *See Barrios,* 277 F.3d at
    1134; *Richard S. v. Dep't of Dev. Servs. of State of Cal.*, 317 F.3d 1080, 1086 (9th

28  Cir. 2003).

1  necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion

2  to his individual stake in the matter.'" (citations omitted)).

3       Each of the requirements of Cal. Civ. Proc. Code Section 1021.5 has been met

4  in the instant case. First, there has been a significant benefit to a large class of

5  persons in that this lawsuit was successful in enforcing the civil rights of Plaintiff

6  and the certified class of wheelchair users. *See Estrada v. FedEx Ground Package*

7  *System, Inc.*, 154 Cal. App. 4th 1, 16-17 (2007)(plaintiff qualifies where he "pursued

8  this public interest class action not only for himself but on behalf of a class

9  comprised of FedEx's past and present drivers…"). Second, the necessity and

10  financial burden of bringing legal action for enforcement warrant a fee award. This

11  lawsuit is certainly an instance in which Plaintiff has "prosecut[ed] a lawsuit that

12  enforces an important public right and confers a significant benefit, despite the fact

13  that [his] own financial stake in the outcome would not by itself constitute an

14  adequate incentive to litigate." *Satrap v. Pac. Gas & Elec. Co.*, 42 Cal. App. 4th 72,

15  80 (1996). In this injunctive relief action, Plaintiff only benefits in the same manner

16  as all other members of the class, aside from his enhancement fee, which would not

17  be a sufficient incentive to take on the litigation. Third, because this action was for

18  injunctive relief alone, no fees can be paid out of the recovery.

19  **IV. THE LODESTAR AMOUNT SOUGHT BY CLASS COUNSEL IS**

20       **REASONABLE**

21       The starting point for computation of attorneys' fees is the "lodestar" arrived

22  at by multiplying the number of hours reasonably expended by the reasonable hourly

23  rates. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The "resulting product is

24  *presumed* to be the reasonable fee to which counsel is entitled."[3] *Pa. v. Del. Valley*

25

26  [3] Adjustments to this presumptively reasonable amount may then be made based
    upon the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70
27  (9th Cir. 1975) to the extent that those factors are not reflected in the lodestar
    calculation. *See Caudle v. Bristol Optical Co., Inc.*, 224 F.3d 1014, 1028-29 (9th Cir.
28  2000). The *Kerr* factors include: (1) the time and labor required; (2) the novelty and

1   *Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986) (internal quotations

2   omitted). Where, as here, Plaintiff obtained substantial results, the "attorney should

3   recover a fully compensatory fee…encompass[ing] all hours reasonably expended on

4   the litigation…" *Hensley*, 461 U.S. at 435.

5       Under federal law, a "fully compensatory fee" is one that encourages the

6   vindication of constitutional and statutory rights through recovery of all costs and

7   time spent on the case, calculated at private market rates. It must ensure that

8   attorneys are paid for all the time they devote to the litigation. It is not limited by the

9   number of causes of action on which relief is awarded, or the amount of damages

10  recovered. *See City of Riverside v. Rivera*, 477 U.S. 561, 570-73 (1986) (plurality

11  opinion). Once the plaintiff has been determined to be the prevailing party, he is

12  entitled to all reasonable time spent. *See Ustrak v. Fairman*, 851 F.2d 983, 988 (7th

13  Cir. 1988)(citing *Hensley*, 461 U.S. at 435).

14      The California Supreme Court similarly has held that courts must calculate the

15  amount of an attorney's fee award so that it provides full compensation for all time

16  reasonably expended in rendering legal services in the case. *See Serrano v. Unruh*

17  ("*Serrano IV*"), 32 Cal.3d 621, 632-34, 639 (1982). One purpose in calculating the

18  fee award is to provide an amount that will be "likely to entice competent counsel to

19  undertake difficult public interest litigation." *San Bernardino Valley Audubon Soc'y*

20  *v. County of San Bernardino*, 155 Cal. App. 3d 738, 755 (1984); *see also Woodland*

21  *Hills Residents Ass'n, Inc. v. City Council*, 23 Cal. 3d 917, 933 (1979)(The

22  "fundamental objective" of certain attorney fee provisions is "to encourage suits

23  effectuating a strong [public] policy by awarding substantial attorney's fees . . . to

24  _____

25  difficulty of the questions involved; (3) the skill requisite to perform the legal service
    properly; (4) the preclusion of other employment by the attorney due to acceptance
    of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time

26  limitations imposed by the client or the circumstances; (8) the amount involved and
    the results obtained; (9) the experience, reputation, and ability of the attorneys, (10)

27  the "undesirability" of the case; (11) the nature and length of the professional
    relationship with the client, and (12) awards in similar cases. *See also Ballen v. City*

28  *of Redmond*, 466 F.3d 736, 746 (9th Cir.2006).

1   those who successfully bring such suits..."). The *Serrano IV* Court further stressed

2   that Defendants "cannot litigate tenaciously and then be heard to complain about the

3   time necessarily spent by the plaintiff in response." *Serrano IV, supra,* at 638. The

4   Court continued, "those who elect a militant defense ... [are responsible for] the time

5   and effort they exact from their opponents.'"). *Id.* at 638, n. 26.

6       Using the lodestar formula, Class Counsel are entitled to compensation for the

7   hours of work performed by all attorneys (whether designated on the pleadings or

8   not), law clerks, and paralegals with each individual's work compensated at a

9   reasonable rate, according to his/her experience and skill. *See Serrano v. Priest*

10  ("*Serrano III*"), 20 Cal. 3d 25, 48 (1977); *see also In re Tyco Int'l. Ltd Multidistrict*

11  *Litigation,* 535 F.Supp.2d 249, 272 (2007)(like paralegal time, it is "appropriate to

12  bill a contract attorney's time at market rates and count these time charges toward the

13  lodestar."). Plaintiff's counsel's lodestar is reasonable because: (a) detailed,

14  contemporaneous records show that counsel expended all hours on negotiation or

15  litigation tasks necessary to attaining relief, (b) counsel's billing rates are comparable

16  to those of attorneys with similar expertise and experience and, (c) counsel obtained

17  an excellent result for the class of wheelchair users who will attend Angels Baseball

18  games. Under similar circumstances, this Court awarded full attorneys fees with a

19  1.9 multiplier, totaling $5,671,778.68, in a pure injunctive relief action. *See White v.*

20  *Experian Information Solutions, Inc.,* 2011 WL 2971957 (C.D.Cal. 2011).

21      **A. The Number of Hours Claimed is Reasonable and Well-**

22      **Documented.**

23          i.   *Class Counsel Pursued this Case Efficiently and the Hours*

24               *Claimed are Reasonable.*

25      Counsel's detailed time records demonstrate that this case was pursued

26  vigorously and efficiently. Class counsel used minimal staffing in the prosecution of

27  this case as one associate level attorney did the majority of the pleading work with

28  partner level attorneys having primarily a supervisory role. *See* DeSimone Decl. at ¶

1    54; Declaration of Amanda R. Canning ("Canning Decl.") at ¶9. Plaintiff conducted

2    only necessary discovery, and other expenses were kept to a minimum. *See*

3    DeSimone Decl. at ¶ 55; Canning Decl. at ¶9, 10. Moreover, experienced disability

4    rights attorney, Eugene Feldman provided critical input and insight to effectively

5    prosecute this case.[4] *See* DeSimone Decl. at ¶ 47; Canning Decl. at ¶9. As noted

6    above, all of Class Counsel's time in this case was merited by the necessities of this

7    case and the successful settlement. *See supra* Section II.

8        In order to justify a reduction in the lodestar based upon excessive time,

9    Defendants must show that "the time claimed is obviously and convincingly

10   excessive." *Perkins v. Mobile Housing Board*, 847 F.2d 735 (11th Cir. 1988).

11   Despite Defendants' consultant's contention, there is no indication here, however,

12   that Class Counsel's time was excessive.[5] *See Moreno v. City of Sacramento*, 534

13   F.3d 1106, 1112 (9th Cir. 2008)("It must also be kept in mind that lawyers are not

14   likely to spend unnecessary time on contingency fee cases in the hope of inflating

15   their fees. The payoff is too uncertain, as to both the result and the amount of the fee.

16   It would therefore be the highly atypical civil rights case where plaintiff's lawyer

17   engages in churning. By and large, the court should defer to the winning lawyer's

18   professional judgment as to how much time he was required to spend on the

19   case...").

20       Mr. Toothman's contention that this case could have been litigated exclusively

21   by "one experienced lawyer with support from one paralegal and some associate

22

---

23   [4] Whether identified on the pleadings or not, Mr. Feldman's assistance in litigating
     this matter was critical and compensable toward the lodestar. *See, supra, In re Tyco*
24   *Int'l. Ltd Multidistrict Litigation*, 535 F.Supp.2d at 272 (contract attorney's time
     count toward the lodestar). Mr. Feldman provided essential expertise in litigating a
25   highly specific area of Title II and Title III public accommodation law, worked
     closely with Ms. Canning in research for motions, attended the mediation and most
26   court appearances, and assisted in interpreting complex architectural and public
     accommodations documents. His contribution to resolving this matter was critical to
27   the success of this case. *See* DeSimone Decl. at ¶ 48; Canning Decl. at ¶ 9.
     [5] Defendants retained a consultant John W. Toothman of The Devil's Advocate, to
28   audit Class Counsel's fees and provide a critique. *See* DeSimone Decl. at ¶18.

1   time" exemplifies a lack of understanding of the complex nature of class action

2   lawsuits as well as overlooks the fact that that was primarily how the case was

3   managed.[6]  Importantly, the expectations of class counsel when litigating on behalf

4   of and maintaining communication with members of a class action lawsuit are

5   particularly demanding as well as distinct from other areas of legal practice.[7]

6   Nonetheless, he wrongly speculates that five lawyers were assigned to the case from

7   SDSHHH.  In fact, 39 percent of the work on this case was performed by Amanda R.

8   Canning and 36 percent by V. James DeSimone (together totaling 75 percent), with

9   an additional 5 percent performed by Michael D. Seplow, an assisting partner on the

10   case.[8]  *See* DeSimone Decl. at ¶ 54.  The time spent by each of the attorneys and staff

11   is well within what is reasonable on a class action lawsuit of this magnitude.

12

13

14   _____

[6] Tellingly, there is no indication that Defendants' consultant has any expertise on
15   the demands of litigating a class action lawsuit.  There is also no evidence that he has
16   ever practiced in California, or knows anything about the legal landscape or market
     rate for legal fees here.  Likewise, there is no evidence that he has practical
17   experience litigating class action lawsuits on either the plaintiff or defense side.  As
18   described, the demands on class counsel are particularly rigorous, especially
     considering the need to manage a large number of class members.
19   [7] Cognizant of such a reality, Federal Rule of Civil Procedure Rule 23 (c)(1)(B) and
20   (g) require that competent Class Counsel be approved by the court prior to
     certification.  The court considers "counsel's experience in handling class actions" as
21   well as the "resources that counsel will commit to representing the class."  FRCP
22   23(g)(1)(ii)&(iv).  On June 30, 2011, this Court, when certifying the class, appointed
     SDSHHH as class counsel, finding counsel to have experience in "disability and
23   discrimination cases, as well as class action lawsuits," and "thus earning the Court's
24   confidence" in meeting the requirements of FRCP 23(g).  (Class Cert Decision,
     16:21, 18:6).  Defendants presented no challenge to the adequacy of counsel at that
25   time.
26   [8] In important motions, such as the Motion for Class Certification, Mr. Seplow
     provided critical insight and editing skills.  This team effort at critical junctures of a
27   class action case increased the likelihood of the success which was ultimately
28   achieved in this action.

1     *ii. Plaintiff's Counsel Has Provided Detailed Documentation of*

2       *Their Time.*

3   Class counsel has provided detailed documentation of fees their time on this

4 case. *See* Exhs. B-D to DeSimone Decl. (charts summarizing fees and costs

5 requested as well as detailed time records).  The time records of Class Counsel are

6 more than adequate to meet the documentation requirements set forth by the

7 Supreme Court and the Ninth Circuit. *See Hensley*, 461 U.S. at 437 n.12 ("Plaintiff's

8 counsel, of course, is not required to record in great detail how each minute of his

9 time was expended. But at least counsel should identify the general subject matter of

10 his time expenditures."); *Dennis v. Chang*, 611 F.2d 1302, 1308-09 (9th Cir.

11 1980)(finding chronological and detailed time records with no dates sufficient).

12 Class Counsels' records exceed this standard in that they provide detailed

13 descriptions of the work conducted.[9] *See* Ex. B to DeSimone Decl.  Additionally, the

14 declarations and supporting documentation submitted herewith constitute evidence of

15 exactly the type that courts have relied on in numerous fees decisions. *See, e.g.,*

16 *Perkins*, 847 F.2d at 738 ("[S]worn testimony that, in fact, it took the time claimed is

17 evidence of considerable weight on the issue of the time required in the usual

18 case...").

19   **B. The Hourly Rates Claimed Are Comparable to Other Local**

20    **Attorneys' Rates and Reflect the Risks Inherent in the Litigation.**

21   Both the California Supreme Court and the United States Supreme Court have

22 clearly held that fee awards to public interest attorneys who do not charge their

23 clients (such as Plaintiff's counsel) must be based on the prevailing billing rates of

24
  [9] Counsel are also entitled to fees for time conferencing. *See McKenzie v. Kennickell*
25 *(D.D.C. 1986) 645 F. Supp. 437, 450* ("[M]eetings between junior and senior
  lawyers to discuss the progress of research and review completed assignments are
26 reasonable and appropriate means to secure proper supervision and efficient staffing
  of large class actions cases such as this."); *see also Berberena v. Coler* (7th Cir.
27 1985) 753 F.2d 629, 633 (awarding attorney time spent in strategy conferences).  All
  of the time spent by counsel is well documented and justified. *See* DeSimone Exh.
28 B.

1  attorneys in private practice with similar skills and experience.  *See Blum v. Stenson*,

2  465 U.S. 886, 895 (1984) (legislative history of civil rights statutes requires that

3  hourly rates for public interest attorneys equal prevailing private market rates);

4  *Serrano v. Unruh*, 32 Cal.3d 621, 640-44 (1982)(same).

5          Class Counsel request compensation for the work in this case at their regular

6  hourly rates for the year 2012.  For the fee award to be reasonable, it must be based

7  on current, rather than historic, hourly rates.  *Missouri v. Jenkins*, 491 U.S. 274, 284

8  (1989)(court may account for delay in payment through use of current rates).  These

9  rates are reasonable as measured by the rates charged by attorneys of comparable

10  experience and skill in the Southern California area.  Plaintiff has provided

11  representative declarations of attorneys which establish that rates for Class Counsel

12  are well within the prevailing hourly rates of other civil rights litigation firms, if not

13  below.  *See* Declarations of Carol Sobel ("Sobel Decl."), Shawna Parks ("Parks

14  Decl.") at ¶13, and Aashish Desai ("Desai Decl.") at ¶ 5, filed herewith.[10]

15          As the Declaration of fee expert Carol Sobel describes, the rates requested for

16  the attorneys and staff on this case, are "well within the range of reasonable market

17  rates for each attorney."  *See* Sobel Decl. at ¶13.  For example, the requested rate for

18  Mr. DeSimone, $695 per hour, is more than 10 percent less than the rate of $770 per

19  hour awarded in 2008 to a 1985 graduate then with O'Melveny & Meyers, *see id.* at

20  ¶18, and almost 15 percent lower than the rate of $785 per hour awarded in 2009 to a

21  Gibson Dunn 1988 graduate.  *Id.* at ¶19.  The rate of $450 per hour for Ms. Canning,

22  a 2006 graduate, is also consistent with, if not below, the market.  *Id.* at ¶20

23  ($460/hour awarded in 2011 for a 2006 graduate; $460/hour awarded in 2009 for a

24  2006 graduate) and ¶22 ($600/hour awarded in 2009 for attorney with five years

25  experience); *see also* Parks Decl. at ¶10 (attaching order approving a rate of $535 for

26  ────────────────────────

[10] While Defendants' consultant's report recognizes that it has limited data on

27  "comparable rates," in fact offering none, it arbitrarily reduces Mr. DeSimone's rate
to $450/hour.  As the declarations of Carol Sobel, Aashish Desai and Shawna Parks

28  show, Mr. DeSimone's rate of $695 is well within market rate, if not below.

1   an attorney with seven years of experience and $475 for an attorney with five years

2   of experience).  The Sobel Declaration further elaborates on the reasonableness of

3   other billers on this matter and finds them to be well within market rates.  *See* Sobel

4   Decl. at ¶10-23.  In light of the above, and as set forth in the supporting declarations,

5   Class Counsel's rates are reasonable and well-justified.

6          Furthermore, counsel's rates do not account for the substantial risks in

7   litigating this matter.  Defendants vigorously contested liability, the scope and extent

8   of the ADA violations, and the propriety of class certification.  *See* DeSimone Decl.,

9   ¶ 15.  While Plaintiff and Class Counsel believe that they would have ultimately

10   prevailed on the merits in this litigation, Plaintiff and Class Counsel realize the risks

11   in litigating against Defendants' position.  *Id.*  Resolution of these issues through

12   further motion practice, at trial and/or on appeal would not only delay

13   implementation of changes to the Stadium but also present a risk at each juncture that

14   the class might not receive any recovery at all.  *See* Sobel Decl. at ¶25; *see also*

15   Desai Decl. at ¶ 5 ("Contingent risk is not accounted for in my standard hourly rate

16   and those charged in the complex class action marketplace.")  These risks must be

17   considered in assessing the fairness of the settlement, which guarantees prompt and

18   substantial relief from Defendants.  The Settlement Agreement in this case is

19   therefore consistent with the "overriding public interest in settling and quieting

20   litigation" that is particularly true in class action suits.  *See Van Bronkhorst v. Safeco*

21   *Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Newberg on Class Actions,* (4th

22   Ed.), 2010, § 11:41 (citing cases).

23          Furthermore, Class Counsel risked not only a great deal of time but also a

24   great deal of expense to ensure the successful litigation of this action on behalf of the

25   entire Class.  *See* DeSimone Decl., ¶ 32, 54-55.  There was the prospect of the

26   enormous cost inherent in class action litigation, as well as a long battle with a

27   corporate defendant that had retained a premier defense firm.  *See* DeSimone Decl. at

28   ¶ 32; *see also* Desai Decl., at ¶8 ("[B]ecause of the substantial length of time that

1  may occur before any recovery of fees and expenses, taking [on contingency fee

2  class action cases] can and often does have a substantial impact on a firm's earnings

3  or even existence.") and ¶9 ("California law permits attorney compensation to be

4  calculated in part by reference to the financial risk assumed by an attorney in taking a

5  class action case, to put such work on a competitive footing with the other work

6  available to the law firms.").

7       Therefore, the risks of litigation undertaken by Class Counsel support the fee

8  requested.  Indeed, the perception that Class Counsel is both prepared and well-

9  qualified to litigate often results in settlement discussions, hence the strength and

10 reputation of counsel is critical and an important component of the outstanding result

11 in this matter.  *See* Sobel Decl., ¶11-13; Parks Decl. ¶11 (both attesting to Class

12 Counsel's skill and experience).

13      **C. In the Exercise of Billing Judgment, Class Counsel Has Discounted**

14      **its Lodestar Total By More than 17 Percent.**

15      In the exercise of billing judgment and to take account of any duplication or

16 inefficiencies, Class Counsel made discreet deductions from its total hours.  These

17 deductions reflect a 25 percent reduction of conference time as well as a complete

18 lack of billing for Law Clerk time, totaling a 17 percent reduction of the total billing.

19 *See* DeSimone Decl. at ¶ 53.  These deductions account for any arguably inefficient

20 time.

21      **V. CLASS COUNSEL ARE ENTITLED TO A MULTIPLIER BASED**

22      **ON THE CONTINGENT RISK OF THE LITIGATION, THE**

23      **DIFFICULTY OF THE CASE, AND THE RESULTS OBTAINED.**

24      The operative complaint contains a parallel state disability claim under Civil

25 Code Section 54, in addition to the ADA claim.  That section tracks the ADA and

26 provides the same relief.  Under California law, Class Counsel are entitled to a

27 multiplier of the lodestar because of the outstanding results in enforcing California's

28 statutory scheme to protect disabled individuals.  *See Ketchum v. Moses*, 24 Cal. 4th

1   1122, 1134 (2001).  A lodestar may be enhanced or multiplied to take into account

2   factors other than hours and rates that go into the determination of a reasonable

3   attorneys' fee, as "the unadorned lodestar reflects the general local hourly rate for

4   a *fee-bearing case*; it does *not* include any compensation for contingent risk,

5   extraordinary skill, or any other factors a trial court may consider...." *Id.* at 1138

6   (emphasis in original).

7        The multiplier factors are not carved in stone.  Rather, trial courts should

8   consider all factors relevant to a given case.  *Lealao v. Beneficial Cal., Inc.*, 82 Cal.

9   App. 4th 19, 40 (2000).  For example, in addition to the "contingent risk" and

10  "extraordinary skill" factors at issue in *Ketchum*, in *Lealao*, the court stated that the

11  results obtained and comparable fees paid in the private marketplace should be

12  considered.  *Id.* at 53. Courts can also consider: "the nature of the litigation, its

13  difficulty, the amount involved, the skill required and the skill employed in handling

14  the litigation, the attention given, the success of the attorney's efforts, his learning,

15  his age, and his experience in the particular type of work demanded...; [*sic*] the

16  intricacies and importance of the litigation, the labor and necessity for skilled legal

17  training and ability in trying the cause, and the time consumed."  *Church of*

18  *Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 659 (1996).

19       As in the private legal marketplace, statutory attorney fee awards may (and

20  often do) include significant enhancements: "Multipliers can range from 2 to 4 or

21  even higher." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001).

22  In determining the appropriate multiplier, the ultimate goal is "to encourage suits

23  effectuating a strong [public] policy by awarding substantial attorney's fees...to

24  those who successfully bring such suits." *Woodland Hills Residents Ass'n v. City*

25  *Council of L.A.*, 23 Cal. 3d 917, 933 (1979). To accomplish that purpose, the award

26  must be large enough "to entice competent counsel to undertake difficult public

27  interest cases."  *San Bernardino Valley Audubon Soc'y, Inc. v. Co. of San*

28  *Bernardino*, 155 Cal. App.3d 738, 755 (1984).

1    In this case, a multiplier of 1.5 is warranted given the length of the litigation,

2  the type of work demanded, the intricacies of the disability claims, the excellent

3  results obtained, and the importance of encouraging such suits in the public interest.

4    **VI. CLASS COUNSEL ARE ENTITLED TO RECOVER OUT-OF-**

5    **POCKET COSTS.**

6    Plaintiff is entitled to recover all reasonable out-of-pocket litigation expenses

7  incurred in prosecuting this public interest action. *See* 42 U.S.C. § 12205 (the court

8  "may allow the prevailing party…litigation expenses, and costs"). "Litigation

9  expenses include such items as expert witness fees, travel expenses, etc." 28 C.F.R.

10 § 36.505.  Furthermore, the Settlement Agreement anticipates that Defendants will

11 pay costs incurred by Class Counsel. *See* Exh A to DeSimone Decl.

12    Class Counsel incurred documented out-of-pocket litigation expenses of

13 $47,167.52 in pursuing this case. *See* DeSimone Decl. at Exh. D.  Counsel kept costs

14 within reasonable limits and have sufficiently detailed their expense entries to allow

15 for meaningful review and therefore should recover costs incurred.

16    **VII. PLAINTIFF IS ENTITLED TO AN ENHANCEMENT FEE FOR**

17    **LITIGATING THIS CASE**

18    Like the attorneys fees and costs provisions of the Settlement Agreement, the

19 parties also agreed that they would submit the determination of Plaintiff's

20 enhancement fee to the Court for resolution should the parties be unable to come to

21 an agreement between a range of $4,000 and $75,000. (MOU ¶7)  After the MOA

22 was executed, counsel for Defendants stated they would not offer more than the

23 bottom scale of negotiating range, i.e. $4,000.00 for Plaintiff's enhancement fee.

24 DeSimone Decl., ¶ 22 .  Plaintiff first offered to accept $25,000 and then $18,000 as

25 an enhancement fee and Defendants did not counter to that offer. *Id.*

26    Ample authority supports Plaintiff's requested enhancement fee. *See*

27 *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250-

28 251 (S.D. Ohio 1991) (approving incentive payments of $50,000 to each class

1  representative); *In re Dunn & Bradstreet Credit Services Consumer Litigation*, 130

2  F.R.D. 366, 373-374 (S.D. Ohio 1990) (approving incentive payments amounting to

3  $35,000 to $55,000 for each class representative); *Van Vranken v. Atlantic Richfield*

4  *Co.*, 901 F.Supp. 294 (N.D.Cal. 1995)(approving $50,000 participation award);

5  *Shoff, et al. v. AT&T et. al.,* Case No. CV 07-3289 DSF (AGRx) (C.D.Cal. 2008)

6  (approving enhancement award of $45,000 for each class representative); *Doyle et.*

7  *al. v. AT&T et. al.*, No. CV 08-1275 (JAH) (S.D.Cal. 2010)(approving enhancement

8  award of $25,000 for each class representative); *In re Conseco Life Insurance Co.*

9  *Cost of Insurance Litigation*, 2007 WL 3170134, *2 (C.D.Cal.)(approving incentive

10  award of $25,000 for each representative).

11       Plaintiff's offer of $18,000 is more than reasonable under the circumstances.

12  The Class Representative invested substantial time into this lawsuit, and provided

13  invaluable insight from the perspective of a wheelchair user.  Declaration of J. Paul

14  Charlebois ("Charlebois Decl."), ¶ 7-19; *see also* DeSimone Decl., ¶ 56.  This insight

15  ultimately helped to fashion a resolution to this case. *Id; see also* DeSimone Decl., ¶

16  56.  Moreover, although the Class Representative was discriminated against, he

17  decided to forgo an individual action for monetary relief, and instead brought a class

18  action for injunctive relief only, so that other disabled individuals could benefit

19  equally from whatever settlement he obtained.   Charlebois Decl., ¶ 4, 6; *see also*

20  DeSimone Decl., ¶ 56.  Additionally, there is always the possibility of negative

21  publicity resulting from a named plaintiff's participation in a lawsuit; however,

22  because the Class Representative was so committed to this action, he took the risk

23  that his reputation might be harmed from his participation in this lawsuit.  Charlebois

24  Decl., ¶ 4, 9.  *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009)

25  (Enhancement fees "are intended to compensate class representatives for work done

26  on behalf of the class, to make up for financial or reputational risk undertaken in

27  bringing the action. . . ."); *see also Dornberger v. Metropolitan Life Ins. Co.*, 203

28  F.R.D. 118 (S.D.N.Y. 2001)(The amount of the incentive award is related to the

1 | "personal risk incurred by the individual or any additional effort expended by the

2 | individual for the benefit of the lawsuit.").

3 | **VIII. THE FEE AWARD SHOULD INCLUDE FEES FOR TIME SPENT**

4 | **ON THE FEE MOTION**

5 | Class Counsel are entitled to recover their fees and costs incurred in litigating

6 | the fee issue. *See Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973 (9th Cir.2008)

7 | (noting that "it would be inconsistent to dilute a fee award by refusing to compensate

8 | attorneys for the time they reasonably spent in establishing their rightful claim to the

9 | fee") (internal citations omitted); *Thompson v. Gomez,* 45 F.3d 1365, 1366 (9th

10 | Cir.1995); *Clark v. City of Los Angeles,* 803 F.2d 987, 992 (9th Cir.1986). Class

11 | Counsel will submit the total fees incurred in preparing this motion in its reply.

12 | **IX. REQUESTED FEES AND COSTS**

13 | Plaintiff seeks an award of reasonable fees and costs, including reasonable fees

14 | and costs for the time spent litigating the fee issue. These amounts are as follows:

15 | Attorneys Fees: ($712,995.63 lodestar x 1.5 multiplier)      $1,069,493.44

16 | Costs:                                                                                      $47,167.52

17 | Total to Date:                                                                          $1,116,660.96

18 | Based on the foregoing, Plaintiff respectfully submits that an award of

19 | attorneys fees and costs in the amount of $1,116,660.96 is warranted. However,

20 | given the Agreement reached by the parties, Plaintiff respectfully requests that this

21 | Court award $725,000 in attorneys' fees and costs and Plaintiff's requested

22 | enhancement fee of $18,000.

23 |

24 |

25 |

26 |

27 | //

28 | //

**X. CONCLUSION**

It is essential that Class Counsel be fully compensated where, as here, Plaintiff has prevailed in an important civil rights action and is entitled to recover attorneys' fees and costs as a matter of law.  This matter, and the many other actions taken by Class Counsel are risky, lengthy, and expensive enterprises.  For the foregoing reasons, Plaintiff respectfully requests that the Court award the fees and costs requested.

Respectfully submitted,

DATED: April 12, 2012                    SCHONBRUN DESIMONE SEPLOW
                                         HARRIS HOFFMAN & HARRISON


                                         V. James DeSimone
                                         Michael D. Seplow
                                         Amanda R. Canning
                                         Attorneys for Plaintiff
                                         J. Paul Charlebois