JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

**J. PAUL CHARLEBOIS,**

   **Plaintiff,**

 **vs.**

**ANGELS BASEBALL LP et al.,**

  **Defendants.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No.: SACV 10-0853 DOC(ANx)**

**ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

  Before the Court is a Motion for Final Approval of Attorneys Fees, Costs, and Enhancement Fees (Dkt. 95) filed by Plaintiff J Paul Charlebois ("Plaintiff"). After considering the moving papers and oral argument, the Court GRANTS the Motion.

### I. Plaintiff Qualifies As A Party Entitled to Reasonable Attorneys' Fees Under Both Federal and California Statutes

  Plaintiff moves for fees under three statutes: (1) Section 12205 of Title 42 of the United States Code; (2) California Civil Code Section 55; and (3) California Civil Procedure Code

Section 1021.5.  Plaintiff qualifies as a party entitled to reasonable attorneys' fees under all three of these statutes.

### a. Federal Section 12205 provides reasonable attorneys' fees to a prevailing party

Section 12205 of Title 42 of the United States Code provides that a court "may allow the prevailing party" to receive attorneys' fees and costs from defendants in cases brought under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq.  *See* 42 U.S.C. § 12205[1]; *Barrios v. California Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002).  The Ninth Circuit has reversed as an abuse of discretion the denials of attorneys' fees under 42 U.S.C. § 12205 where the party seeking fees satisfied the statutory criteria.  *See e.g., Barrios v. California Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002); *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 835, 844 (9th Cir. 2007) (reversing denial of attorneys' fees under 42 U.S.C. § 12205 in action to improve wheelchair users' access to hotel because statute's requirements were met by "court-enforceable settlement agreement" that "achieved [plaintiff's] objective of obtaining injunctive relief to make [defendant's hotel] accessible").  This is because a "prevailing plaintiff . . . should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  *Barrios*, 277 F.3d at 1134 (9th Cir. 2002).

The Ninth Circuit has held that an ADA plaintiff is a prevailing party if she: (1) "achieve[s] a material alteration of the legal relationship of the parties"; and (2) that alteration is "judicially sanctioned."  *Jankey v. Poop Deck*, 537 F.3d 1122 (9th Cir. 2008).  The second requirement can be met in many ways, including when a party enters into a legally enforceable agreement with the defendant.  *Barrios v. California Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002) (holding that plaintiff was "prevailing party" under 42 U.S.C. § 12205 because he could enforce a settlement against the defendant); *Carbonell v. I.N.S.*, 429 F.3d 894, 899 (9th

---

[1] "In any action . . . commenced pursuant to this chapter, the court . . . in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs."  42 U.S.C. § 12205; *see also* 28 C.F.R. § 36.505.

Cir. 2005) (noting that Ninth Circuit "is in agreement with the vast majority of other circuits" that hold that "a litigant can 'prevail' for the purposes of awarding attorney's fees as a result of judicial action other than a judgment on the merits or a consent decree").

The parties do not dispute that Plaintiff is the prevailing party based on the settlement he reached with Defendants.

### b.  California Section 55 provides reasonable attorneys' fees to a prevailing party

California Civil Code Section 55 provides that a "prevailing party . . . shall be entitled" to receive attorneys' fees and costs from defendants in cases brought under the California Disabled Persons Act ("CDPA"), Cal. Civ. Code § 54.  *See* Cal. Civ. Code § 55[2]; *Barrios*, 277 F.3d at 1137.  As with fees under Section 12205, the parties do not dispute that Plaintiff is the prevailing party under this California statute.  *See Barrios*, 277 F.3d at 1137 (reversing denial of attorneys' fees because plaintiff was "prevailing party" under Section 55 given that settlement agreement gave plaintiff access to the baseball field and $10,000); *cf. Hubbard v. SoBreck, LLC* (*Hubbard II*), 554 F.3d 742, 745 (9th Cir. 2009) (explaining that "the proof required to show a violation of the CDPA and of the ADA is identical" and so "a grant of fees on the California cause of action [under Section 55] is necessarily a grant of fees as to the ADA claim [under Section 12205]").

### c.  California Section 1021.5 provides reasonable attorneys' fees to a successful party whose legal victory transcends her personal interest

California Civil Procedure Code Section 1021.5 provides that "a court may award attorneys' fees to a successful[3] party against one or more opposing parties in any action which

---

[2] "Any person who is . . . potentially aggrieved by a violation of Section 54 or 54.1 of this code . . . may bring an action to enjoin the violation. The prevailing party in the action shall be entitled to recover reasonable attorney's fees."  Cal. Civ. Code § 55.

[3] Unlike the prevailing party fee-shifting statutes of federal law, "California law . . . does not require a judicially recognized change in the legal relationship between the parties as a

has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." Cal. Civ. Proc. Code § 1021.5.  These requirements are satisfied, and thus an award under Section 1021.5 "is appropriate," if "the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff out of proportion to his individual stake in the matter." *In re Conservatorship of Whitley*, 50 Cal. 4th 1206, 1215, 241 P.3d 840, 846 (2010) (internal quotation marks omitted).

Courts have reversed as an abuse of discretion the denials of attorneys' fees under Section 1021.5 where the party seeking fees satisfied the statutory criteria.  *See e.g., Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 835, 844 (9th Cir. 2007) (reversing denial of attorneys' fees under Section 1021.5 in action to improve wheelchair users' access to hotel because statute's requirements were met by "court-enforceable settlement agreement" that "achieved [plaintiff's] objective of obtaining injunctive relief to make [defendant's hotel] accessible"); *Hull v. Rossi*, 13 Cal.App.4th 1763, 1765 (1993).

Each of the requirements of Section 1021.5 has been met in the instant case.  First, this lawsuit has resulted in the enforcement of an important right affecting the public interest, namely, the right of wheelchair users to have affordable access to facilities.  Second, there has been a significant benefit to a large class of persons because this lawsuit was successful in enforcing the civil rights of Plaintiff and the certified class of wheelchair users.  *See Estrada* v. *FedEx Ground Package System, Inc.,* 154 Cal. App. 4th 1, 16-17 (2007) (plaintiff was entitled to attorneys' fees under Section 1021.5 where he "pursued this public interest class action not only

prerequisite for obtaining attorney fees under Code of Civil Procedure section 1021.5." *Tipton-Whittingham v. City of Los Angeles*, 34 Cal. 4th 604, 608 (2004) (quotation omitted).

for himself but on behalf of a class comprised of [defendant's] past and present drivers").  Third, because this action was for injunctive relief alone, no fees can be paid out of the recovery.

Finally, the necessity and financial burden requirement "seeks economic equalization of representation in cases where private enforcement is necessary." *In re Conservatorship of Whitley*, 50 Cal. 4th at 1214.  This requirement asks the court to examine: (1) the "adequacy of public enforcement" (necessity prong); and (2) the financial disincentives and incentives of private action (financial burden prong).  *Id.*  As with most lawsuits brought under the CDPA to improve disabled people's access to facilities, the necessity prong is satisfied because the California legislature recognized the *inadequacy* of public enforcement when it provided for a private right of action and the recovery of attorneys' fees under Section 55.  *Donald v. Cafe Royale, Inc.*, 218 Cal. App. 3d 168, 179 (1990) (extensively reviewing the repeated expansion of the CDPA's enforcement mechanisms and concluding that it "is plain [that] the Legislature's purpose in imposing increased penalties and additional enforcement methods is to guarantee compliance with equal access requirements.").  Similarly, the financial burden prong is satisfied because the $18,000 that Plaintiff seeks as his enhancement fee is not sufficient incentive to take on this litigation, which spanned more than two years.  *See Jones v. Pasta Pelican, Inc.*, C 05-04245 WHA, 2010 WL 1465699 (N.D. Cal. Apr. 13, 2010) (granting attorneys' fees in action to improve wheelchair users' access to restaurant under both 42 U.S.C. § 12205 and Cal. Civ. Proc. Code § 1021.5 and rejecting defendant's argument that necessity and financial burden requirement was not met).

### d.  Conclusion regarding entitlement to reasonable fees

In sum, Plaintiff qualifies as a party entitled to reasonable attorneys' fees under all three of these statutes under which he moves for fees: (1) Section 12205 of Title 42 of the United States Code; (2) California Civil Code Section 55; and (3) California Civil Procedure Code Section 1021.5.  Thus, the only dispute is whether the amount of fees sought is reasonable.

## II.  Reasonableness of Fees

A "reasonable" fee is a fee that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, __ U.S. __,

130 S.Ct. 1662, 1672 (2010) (discussing analogous civil rights statute).[4] All three statutes under which Plaintiff moves calculate the reasonableness of attorneys' fees using the "lodestar" method, which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. *See Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) (applying lodestar method to Section 12205, Section 55, and Section 1021.5 in action to improve accessibility for physically disabled people); *Serrano v. Unruh* (*Serrano IV*), 32 Cal. 3d 621, 643, 652 P.2d 985 (1982) (upholding lodestar method to calculate fees under section 1021.5); *Perdue*, 130 S.Ct. at 1672 (explaining that, generally, the lodestar formula should be used to determine a reasonable figure for an award of attorneys' fees).

Under the Lodestar method, Plaintiff's attorneys are entitled to be compensated for "all hours reasonably spent on the matter." *Serrano IV, supra,* 32 Cal.3d at 635, 186 Cal.Rptr. 754, 652 P.2d 985; *Sundance v. Municipal Court,* 192 Cal.App.3d 268, 273-274, 237 Cal.Rptr. 269 (1987). The lodestar figure is presumed to represent an appropriate fee, but the Court may adjust the figure upward or downward to take into account special factors. *See Blum v. Stenson*, 465 U.S. 886, 897, 104 S. Ct. 1541 (1984); *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987). Adjustments to this presumptively reasonable amount may then be made based upon the factors set forth in *Kerr* v. *Screen Extras Guild, Inc.,* 526 F.2d 67, 69-70 (9th Cir. 1975) to the extent that those factors are not reflected in the lodestar calculation. *See Caudle* v. *Bristol Optical Co., Inc.,* 224 F.3d 1014, 1028-29 (9th Cir. 2000). The *Kerr* factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill

---

[4] Courts in the Ninth Circuit often apply the rules used in the fee-shifting civil rights statutes to motions for attorneys' fees in ADA and CDPA action under 42 U.S.C. § 12205 and Cal. Civ. Code § 55. *See e.g., Barrios v. Cal. Interscholastic Fed'n,* 277 F.3d 1128, 1134 (9th Cir.2002) (applying the holding in *Hensley v. Eckerhart,* 461 U.S. 424 (1983), which governed attorneys' fees in civil rights actions under 42 U.S.C. § 1988, to decision on attorneys' fees in ADA and CDPA action under 42 U.S.C. § 12205 and Cal. Civ. Code § 55); *see also Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000).

requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client, and 12) awards in similar cases.  *See Ballen* v. *City of Redmond,* 466 F.3d 736, 746 9th Cir.2006).

Plaintiff seeks a total of $725,000 in attorneys' fees and costs, which is the maximum available under the parties' settlement agreement, as well as an $18,000 enhancement fee, which is within the range proscribed by the settlement agreement.  *See* Reply at 24.  The $725,000 figure is a reduction from the $1,165,448.08 to which Plaintiff argues that his attorneys ("Class Counsel") are entitled, that is, the sum of $1,118,280.56 in attorneys' fees and $47,167.52 in costs.  *See* Reply at 24.  The attorneys' fees are calculated by multiplying the $745,520.37 lodestar figure by a 1.5 multiplier.  The $745,520.37 lodestar figure reflects a reduction from Plaintiff's original figure based on Plaintiff's acquiesce to Defendants' criticisms of some hours.  *See* Feldman Decl. at ¶¶ 11-12; DeSimone Reply Decl. at ¶¶ 21-23.  The following chart reflects how Plaintiff calculated Class Counsel's figures and also indicates the bar admission year, rates, total hours, and fees incurred by each biller involved in litigating this action:

| Attorney/Legal Worker | Bar Admittance: | Rate: | Hours: | Fees: | % of Fees: |
|---|---|---|---|---|---|
| V. James DeSimone | 1985 | $695.00 | 401.20 | $278,834.00 | 35% |
| Michael D. Seplow | 1990 | $630.00 | 68.80 | $43,344.00 | 5% |
| Amanda Canning | 2006 | $450.00 | 724.30 | $325,935.00 | 41% |
| Eugene Feldman[1] | 1985 | $600.00 | 136.70 | $82,020.00 | 10% |
| Courtney Abrams | 2009 | $375.00 | 19.00 | $7,125.00 | 1% |
| Menaka Fernando | 2010 | $325.00 | 6.10 | $1,982.50 | 0.25% |
| David Sarnoff | 2005 | $460.00 | 15.50 | $7,130.00 | 1% |
| Paralegals | n/a | $150.00 | 337.55 | $50,632.50 | 6% |
| Law Student Interns | n/a | $200.00 | 480.00 | N/A | 0% |

| | | | Total Hours: | Total Fees: | |
|---|---|---|---|---|---|
| | | | 1709.15 | $797,003.00 | |

| | |
|---|---|
| Internal Conference Time ("CT") Fees Pre-Mediation: | $107,952.50 |
| Internal CT Fees Post-Mediation: | $14,755.00 |
| Total CT Fees: | $122,707.50 |
| 25% Billing Judgment Reduction: | $30,676.88 |
| Total CT Fees after 25% Billing Judgment Reduction: | $92,030.63 |
| Judgment Billing Reduction of 100% of Law Clerk Hours: | $96,000.00 |
| Total Complaint Time Fees: | $40,981.50 |
| 50% Billing Judgment Reduction: | $20,490.75 |
| Total Complaint Time Fees after 50% Billing Judgment Reduction: | $20,490.75 |
| Total Reduction: | $147,167.63 |
| Total Percent Reduction: | 18.47% |
| Total Fees with Billing Judgment: | $745,835.37 |

*See* DeSimone Reply Decl. Ex. K.[5]

---

[5] Plaintiff's Motion originally reduced the lodestar figure to $712,995.63 as a sort of olive branch to Defendants. *See* DeSimone Decl. at ¶ 54. However, when Defendants Opposition refused to acknowledge that this reduction demonstrated any business judgment by Plaintiff and

### a.  Reasonableness of Class Counsel's fee rates

Both the United States Supreme Court and California Supreme Court have held that fee awards to public interest attorneys who do not charge their clients—such as Class Counsel—are "calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson,* 465 U.S. 886, 895 (1984); *Folsom v. Butte County Ass'n of Govt's,* 32 Cal.3d 668, 683-84 (1982) (same). "The proper reference point in determining an appropriate fee award is the rates charged by private attorneys in the same legal market as prevailing counsel." *Trevinu v. Gates,* 99 F.3d 911, 925 (9th Cir.1996); *Blum,* 65 U.S. at 895, fn. 11 ("[R]ates charged in private representations may afford relevant comparisons.").

Plaintiff has established the reasonableness of Class Counsel's fee rates through the declarations by Class Counsel and three other attorneys who practice civil rights litigation in Southern California. *See United Steelworkers of Am. v. Phelps Dodge Co.*, 896 F.2d 403,407 (9th Cir. 1990) ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determination in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."); *Bouman v. Block,* 940 F.2d 1211, 1235 (9th Cir. 1991) (the submission of "declarations stating that the rate was the prevailing market rate in the relevant community [was] ... sufficient to establish the appropriate rate for lodestar purposes").  In addition, Plaintiff has established the reasonableness of Class Counsel's fee rates through comparison with other cases. *See Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir. 2009) (affirming award of attorneys' fees at rate of $500 per hour where party had submitted a declaration describing her experience and attached copies of fee awards in the same geographical area where counsel had comparable experience).

For example, *Californians for Disability Rights v. Cal. DOT* (*Caltrans*) is a case from 2010 in which the court awarded attorneys' fees in an action to improve accessibility for people

instead sought to further reduce Class Counsel's fees, Plaintiff withdrew some of these reductions and sought $745,520.37.

with mobility disabilities.  *See* No. C 06-05125 SBA (MEJ), 2010 U.S. Dist. LEXIS 141030, *3 (N.D.Cal. Dec. 13, 2010).  The court found reasonable $730/hour for a 1985 graduate and $740/hour for a 1984 graduate, which is $35/hour greater than the rate requested by Mr. DeSimone, a 1985 graduate.  *Id.* at *39.  Similarly, the court found reasonable $660/hour and $650/hour for a 1991 and 1992 graduate respectively, while Mr. Seplow, a 1990 graduate, is only requesting $630/hour.  *Id.*  Likewise, an attorney with six years experience, the same number of years of practice as Ms. Canning, was awarded $500/hour, and a five year attorney was awarded $475.  *Id.*  By contrast, Ms. Canning is only requesting $450/hour.  Given that the *Caltrans* rates were approved in 2010 and it is now 2012, Class Counsel's requested rates are below the high end of the market.  *See also Pereira v. Ralph's Grocery Co.*, CV 07-841 PA(FFMX), 2010 WL 6510346, *1, 7 (C.D. Cal. July 1, 2010) (awarding attorneys' fees under ADA and CDPA and finding reasonable fee rates of $700/hour in class action settlement); *Elder v. Nat'l Conference of Bar Examiners*, C 11-00199 SI, 2011 WL 4079623, *1, 4 n.4 (N.D. Cal. Sept. 12, 2011) (awarding attorneys' fees under ADA and finding reasonable fee rates of $730/hour for a 1985 graduate, $640/hour for a 1993 graduate, $535/hour for a 2003 graduate).

Because Plaintiff established reasonableness of Class Counsel's fee rates, the burden shifts to Defendants to rebut with evidence challenging the accuracy and reasonableness of the rates.[6]  *See Gates*, 987 F.2d at 1397-98.  Defendants argue that Class Counsel's fee rates are

---

[6] Class Counsel requested compensation for the work in this case at their regular hourly rates for the year 2012.  This is appropriate because, for the fee award to be reasonable, it must be based on current, rather than historic, hourly rates.  *Missouri* v. *Jenkins,* 491 U.S. 274, 284 (1989) (court may account for delay in payment through use of current rates); *Cruz ex rel. Cruz v. Alhambra Sch. Dist.*, 601 F. Supp. 2d 1183, 1195 (C.D. Cal. 2009).  Furthermore, while the currently requested rates reflect an increase from Class Counsel's 2011 rates of up to, such an increase is justified by comparable increases in the market.  *See Coles v. City of Oakland*, No. C03-2961 THE, 2007 WL 39304, *7 (N.D. Cal. Jan. 4, 2007) (rejecting defendants' argument that rate increases should not surpass the rate of inflation and stating "the focus of the rate

unreasonable because: (1) one of the three attorneys who submitted declarations in support of Class Counsel is not an appropriate comparator; (2) some of the firms to which Class Counsel compares itself are not peer firms; (3) one court in a different case decided more than four years ago reduced the fee rate of one member of Class Counsel; and (4) Defendants' attorneys billed at lower rates than Class Counsel.  All four arguments fail as a matter of law to meet Defendants' burden on rebuttal.

### i.  Sobel is valid comparator to Class Counsel

Plaintiff's Motion included three declarations from lawyers who practice in the Southern California region attesting to the reasonableness of Class Counsel's fee rates.  All three declarations are from litigators in class action litigation and civil rights law with comparable experience to Class Counsel.  However, Defendants argue that one of these attorneys, Carol Sobel, is not an appropriate comparator because she "specializes in First Amendment Rights and police litigation," which is a "completely different area of law" from the disability rights law "at issue in this case."  Defendants argue, without authority, that such specialization renders Sobel inapposite because "the relevant market in this case is comprised of attorneys in Los Angeles or

analysis is to ensure that fees are awarded at 'prevailing market rates in the relevant community,' and such rates may be affected by factors other than inflation, such as attorneys' additional years of experience or changes in the legal market") (quoting *Blum v. Stenson,* 465 U.S. 886, 895 (1984); *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07–1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012) (approving as reasonable an approximate 10 percent increase between 2011 rates and 2012 rates and because "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice"); *LaPeter v. Canada Life Ins. Co. of Am.*, No. CV06-121-S-BLW, 2009 WL 1313336 *3 (D. Idaho May 11, 2009) ("It is typical for rates to increase on a yearly basis and, also, for associates' and paralegals' rates to increase as they gain more experience.").

Orange County who specialize in disability rights cases under Titles II and 11 of the ADA."
Opp'n at 11.

First, Defendants are incorrect as matter of law that the relevant market is limited only to attorneys who specialize in the specific disability rights laws at issue here. Defendants' unsubstantiated argument is contradicted by the Federal and California fee-shifting statutes at issue here, which "specifically offer[] statutory attorney fees as incentive to encourage attorneys to handle these important cases." *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1077 (N.D. Cal. 2010) (discussing ADA and CDPA); *Donald v. Cafe Royale, Inc.*, 218 Cal. App. 3d 168, 179 (1990) ("[T]he [California] Legislature's purpose in imposing increased penalties and additional enforcement methods is to guarantee compliance with equal access requirements."). This legislative purpose is thwarted if the relevant market is limited only to disability rights specialists; where the prevailing market rate for non-specialists is greater than the rate for disability rights specialists, non-specialists will lack the incentive to litigate these cases and thus the pool of available attorneys will shrink. Perhaps for this reason, Congress did not limit the relevant market as narrowly as Defendants would wish; in fact, in other fee-shifting statutes, Congress expressly stated it "intended that the amount of fees awarded . . . be governed by the same standards which prevail in other types of complex Federal litigation, such as antitrust cases." *City of Riverside v. Rivera,* 477 U.S. 561, 575 (1986) (internal quotations omitted).[7]

Alternatively, even if Defendants were correct that *one* of three declarations provides an inapt comparator, the Court can not reduce Class Counsel's fee rates because the *other two* declarations alone satisfy Plaintiff's burden to show the reasonableness of Class Counsel's fee

---

[7] Furthermore, Defendants' rule is troubling as a matter of policy. Historically, civil rights activists and public interest attorneys have benefitted from a cross-pollination of ideas between various social movements; indeed, the incorporation of fee-shifting statutes in the ADA can be ascribed to their success in other civil rights statutes. Thus, the Court is highly skeptical that the Federal or California legislatures intended to create a fee award system that ghettoized the disability rights field within the civil rights law.

rates.  Defendants' opposition is entirely silent as to these other two declarations in support of Class Counsel's fees.  Such silence is insufficient to meet Defendants' burden to rebut the reasonableness of these rates with specific evidence.  *See Gates*, 987 F.2d at 1397-98.

In sum, the Court is not persuaded by Defendants' argument that Class Counsel's rate should be reduced simply because one of three comparators is not a disability rights specialist.

### ii. Attorneys at large, prestigious firms are valid comparators to Class Counsel

Defendants argue that the fee rates at some of the firms to which Class Counsel compares itself are inappropriate because these firms are "the most prestigious international law firms in the country," and thus have "the highest hourly rates," whereas Class Counsel work at a 12-attorney boutique.  Opp'n at 11.  Defendant submitted two declarations from attorneys at elite firms that aver that their fee rate is lower than some of the fee rates of Class Counsel.  Defendants offer no authority to explain why the size of a firm or the firm's reputation renders comparisons to Class Counsel inappropriate.

Courts have rejected similar arguments under similar fee-shifting statutes.  *See e.g.*, *Cruz ex rel. Cruz v. Alhambra Sch. Dist.*, 601 F. Supp. 2d 1183, 1194-95 (C.D. Cal. 2009) (rejecting defendant's argument "that it is inappropriate to determine rates for Plaintiffs' attorneys using data from large law firms because such firms generally do work in areas of federal litigation that garner higher rates than those charged for civil rights litigation").  The reasoning is two-fold.  First, the Supreme Court and Ninth Circuit have expressly endorsed comparisons to "*lawyers* of reasonably comparable skill, experience, and reputation" and have never required prevailing party's counsel to *also* prove that their *firm* is the same size or has the same level of prestige as that of comparator attorneys.  *See Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984) (emphasis added); *Trevinu v. Gates*, 99 F.3d 911, 925 (9th Cir.1996) ("[R]ates charged by private *attorneys* in the same legal market as prevailing counsel.") (emphasis added).  Indeed, a rule requiring a comparison of firms would be artificially depress attorney fee awards, as few civil rights firms can afford to employ hundreds of associates given the uncertainty of contingency-fee litigation.  Second, attorneys at large, prestigious law firms are valid comparators because they do, in fact,

sometimes litigate civil rights cases; indeed, courts have awarded attorneys fees to attorneys at Skadden Arps, one of the firms to which Class Counsel compares themselves, in disabilities rights cases. *See e.g., Californians for Disability Rights v. Cal. DOT* (*Caltrans* No. C 06-05125 SBA (MEJ), 2010 U.S. Dist. LEXIS 141030, *3 (N.D.Cal. Dec. 13, 2010) (finding reasonable a $730/hour fee awarded to a Skadden Arps attorney in an action to improve accessibility for people with mobility disabilities).

Moreover, Class Counsel's firm reputation *is* prestigious and thus on par with its comparator firms. Class Counsel's firm is a major player in litigating cutting edge international human rights cases, as exemplified by law partner Paul Hoffman's February 2012 argument before the U.S. Supreme Court in *Kiobel* v. *Royal Dutch Petroleum,* Case No.1 0-1491. *See* DeSimone Reply Dec at ¶19. One of the members of Class Counsel, DeSimone, has been named by the Daily Journal among the Top 50 Employment Lawyers in the State of California, inclusive of lawyers from top international law firms, for three years in a row. *Id.*

Alternatively, even if Defendants were correct that attorneys from some law firms were inapt comparators, the Court can not reduce Class Counsel's fee rates because the declarations from three civil rights attorneys alone satisfy Plaintiff's burden to show the reasonableness of Class Counsel's fee rates. As noted previously, Defendants' opposition is entirely silent as to two of these declarations. Such silence is insufficient to meet Defendants' burden to rebut the reasonableness of these rates with specific evidence. *See Gates*, 987 F.2d at 1397-98.

In sum, the Court is not persuaded by Defendants' argument that Class Counsel's rate should be reduced simply because some of the fee rates cited in support of Class Counsel's fees are from attorneys working at firms of a different size or reputation than Class Counsel's firm.

### iii. A different court's decision to reduce DeSimone's fees in a different case decided more than four years ago is not sufficient evidence to reduce DeSimone's fees in this case

Defendants argue that this Court should reduce the fee rate of one member of Class Counsel, DeSimone, because one state court in a different case decided more than four years ago reduced DeSimone's fee rate. Defendants rely on *Benham v. S&J Sec. & Investigation*, in which

a California Court of Appeals held that the "trial court did not act arbitrarily or capriciously in setting rates" of $425/hour rather than DeSimone's requested $600/hour because the "trial court explained that the rate determinations were based on the simplicity of the facts and the lower level of expertise required in this case."  2010 Cal. App. Unpub. LEXIS 1616, *29, *33 (Cal. App. 2d Dist. Mar. 8, 2010).

First, Defendants' argument to reduce fee rates to the rates awarded in cases prior to the action for which fees are sought fails as a matter of law because, as courts have recognized when rejecting identical arguments, such "cases do not necessarily reflect the *prevailing* market rate, which is the appropriate standard."  *Salinas v. Rite Aid Lease Mgmt. Co.*, CV-10-7499-SVW-FMO, 2011 WL 1107213, *1-2 (C.D. Cal. Mar. 17, 2011) (awarding attorneys' fees in ADA action to improve wheelchair users' access to chain store).  While *past* fee rates may be useful evidence to show a *floor* below which a court's fee calculations should not drop, past fee rates in no way support the conclusion that a court should *reduce* the fees in the present case to the rates awarded in the past.  Defendants' logic would produce the absurd result of fee rates flat lining at the rate set by the first court to award fees.  In fact, courts routinely recognize that fee rates increase over time based on a variety of factors.  *See e.g.*, *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07–1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012) (approving as reasonable an approximate 10 percent increase between 2011 rates and 2012 rates and because "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice"); *LaPeter v. Canada Life Ins. Co. of Am.*, No. CV06-121-S-BLW, 2009 WL 1313336 *3 (D. Idaho May 11, 2009) ("It is typical for rates to increase on a yearly basis and, also, for associates' and paralegals' rates to increase as they gain more experience.").

Alternatively, even if Defendants were correct that fee rates could be reduced to past rates, the Court can not reduce Class Counsel's fee rates because Defendants' evidence that one court reduced DeSimone's fee rate four years ago is insufficient to defeat DeSimone's evidence

that other courts have awarded him higher fee rates.[8]  DeSimone's declaration provides the names and case numbers of five cases from more recent years—at least two of which are from this Court's district—awarding DeSimone an hourly rate of $600 to $650 per hour.  *See* DeSimone Decl. ¶ 36 (citing two 2009 cases awarding $600/hour and $625/hour; a 2010 case and two 2011 cases awarding $650/hour).[9]  It is Defendants' burden to rebut Plaintiff's evidence, and this burden is not met given Defendants' failure to distinguish DeSimone other five cases.

---

[8] The rates approved in *Benham* were based on 2008 rates, when the trial court originally granted Plaintiffs fees, not 2012 rates—nor even, as Defendants suggest, the rates when the matter was up on appeal in 2010.  *See* DeSimone Reply Decl. at 20.

[9] The Court overrules Defendants' objection to DeSimone's declaration.  Defendants assert that a declaration under penalty of perjury from an attorney who was counsel of record on a case in which he and his firm were awarded attorneys fees by the Court, and who has personal knowledge of the hourly rate awarded, somehow is not competent to set forth the hourly rate. Defendants are wrong.  DeSimone's declaration, which is based on personal knowledge, properly sets forth the basis for the requested hourly rates for himself and his co-counsel, including the name and case numbers.  His declaration is not hearsay and satisfies all of the necessary foundational requirements for this Court to consider the requested hourly rate. Further, the "best evidence rule" deals with the contents of a written document and simply does not apply to the declaration of an attorney with personal knowledge of the rates he and his firm were awarded by the Court.  There is simply no requirement that Plaintiff has to clutter the docket by attaching all of the actual orders setting forth the hourly rates awarded in cases in which DeSimone and his firm were counsel of record.  *See United Steelworkers of Am. v. Phelps Dodge Co.*, 896 F.2d 403,407 (9th Cir. 1990) ("Affidavits of the plaintiffs' attorney . . . regarding prevailing fees in the community, and rate determination in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.").

In sum, the Court is not persuaded by Defendants' argument that DeSimone's fee rate should be reduced simply because one state court in a different case decided more than four years ago reduced DeSimone's fee rate.

### iv.   The lower fee rates of Defendants' attorneys are not valid bases for reducing Class Counsel's fee rates

Defendants argue that Class Counsel's fee rate should be reduced because Defendants' attorneys billed at lower rates than Class Counsel. Defendants' argument fails as a matter of law because Defendants' attorneys' hourly rate charged to clients is not the standard by which Class Counsel's fees are measured. *See Trevino, supra,* 99 F.3d at 925 (holding defense counsel's rates to be an improper starting point in determining plaintiff counsel's reasonable hourly rate). *See also EEOC.* v. *Harris Farms, Inc.*, 2006 WL 1028755, *19 (E.D. Cal. Mar. 1,2006) (court declined to compare a plaintiff attorney's requested hourly rate to the hourly rate of a defense attorney). Non-contingent rates such as those charged by Defendants' attorneys do not account for the inherent risks associated with contingent work and delay in payment. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946-47 (9th Cir. 2007). Furthermore, Defendants' attorneys have not shown that their experience or reputation is comparable to that of Class Counsel.

### v.   Conclusion regarding fee rates

In sum, the Court rejects as a matter of law all of Defendants' arguments to reduce Class Counsel's fee rates. Accordingly, the Court holds that Class Counsel's fee rates are reasonable.

### b.   Reasonableness of hours worked

The court "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) ("An attorney's sworn testimony that, in fact, [she] took the time claimed . . . is evidence of considerable weight on the issue of the time required."). To reduce the number of hours worked, "it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *Blackwell*, 724 F. Supp. 2d at 1081 (awarding attorneys fees under the same three statutes at issue here, Section 12205, Section 55, and Section 1201.5). This is true because

"the purposes of the [fee-shifting] statutes will not be met" unless Plaintiff's attorneys are "reasonably compensated for all their time." *Id.*; *Moreno*, 534 F.3d at 1112 ("It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee.").

Plaintiff's moving papers and declarations show that Class Counsel efficiently staffed this matter by primarily assigning one associate to handle the bulk of the discovery and motion drafting with oversight by an experienced partner. *See* DeSimone Decl. at ¶ 54; Canning Decl. at ¶ 9. In addition, Class Counsel exercised billing judgment by reducing the total billing for conferences by 25% and not billing at all for the 480 hours worked by law clerks to account for any inefficiencies. *See* DeSimone Decl. at ¶ 54; Canning Decl. at ¶ 9; Ex. K DeSimone Reply Decl. at ¶ 22 (reduction of time on complaint), ¶ 23 (conference time reduction).

Because Plaintiff established reasonableness of Class Counsel's hours, the burden shifts to Defendants to rebut with evidence challenging the accuracy and reasonableness of the hours. *See Gates*, 987 F.2d at 1397-98. Defendants, relying primarily on the conclusions of their fee consultant,[10] argue that Class Counsel's hours are unreasonable because: (1) hours worked by one member of Class Counsel should not be paid because he is not counsel of record; (2) hours billed on the complaint and on a summary judgment motion that was never filed are excessive; and (3) hours worked by one attorney reviewing another's work or on internal communications are duplicative. All three arguments fail to meet Defendants' burden on rebuttal.

### i. Feldman's hours can not be reduced simply because he is not counsel of record or did not make an appearance

Defendants argue that the hours worked by one member of Class Counsel, Feldman, should not be paid because he is not counsel of record and has "never made a single appearance in this case." Opp'n at 13. Defendants' argument fails as a matter of law because they cite no authority and precedent supports a contrary conclusion. In *Invision Media Services*, for

---

[10] Defendants' fee consultant only reviewed billing records through October 18, 2011.

example, the Ninth Circuit overturned the lower court and awarded fees to an attorney who had not made a formal appearance prior to the fee motion. *Invision Media Servs.* v.*Glen J Lerner*, 175 Fed.Appx. 904, 907 (9th Cir. Apr. 23, 2006). The court held that there was "no basis for requiring an attorney who actually contributed to the work product of another attorney" to be required to "enter appearances." *Id.*; *see also Wells Fargo Bank, N.A. v. Jones*, CIV.A. 07-3599, 2009 WL 911011 (E.D. La. Mar. 31, 2009) (following *Invision Media* to award attorneys fees for work done by attorney "prior to formal enrollment as counsel"). Similarly, other courts have found that the hours of contract attorneys—who, like Feldman, are not counsel of record— nonetheless merit inclusion in the lodestar hours. *See In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 272 (D.N.H. 2007) (like paralegal time, it is "appropriate to bill a contract attorney's time at market rates and count these time charges toward the lodestar."). [11]

### ii.  Hours worked on the complaint and summary judgment motion were not excessive

Defendants argue that the hours worked on the complaint and on a summary judgment motion that was never filed are excessive and thus should be excluded from the lodestar figure.

Defendants argue that the 78 hours billed on the complaint are excessive because the complaint contained only 3 pages of facts and five causes of action. Defendant cites two cases which reduced the hours worked on the complaint: *Johnson v. Curtis O. Barnes, PC*, 2010 U.S. Dist. LEXIS 143286 (C.D. Cal. Dec. 13, 2010) and *Cyr v. Reliance Std. Life Ins. Co.*, 2008 U.S. Dist. LEXIS 110336 (C.D. Cal. Jan. 16, 2008).

Plaintiff has reduced by half the hours devoted to researching and drafting the complaint. *See* Reply at 20 n.14; DeSimone Reply Decl. Ex. K. Even if Plaintiff had not done so, the Court declines to follow Defendants' cases. Frankly, the Court suspects that several of the complaints it dismisses every week fail to state a claim because attorneys spend too *little* time researching

---

[11] The Court need not address Defendants' other argument that 2.6 hours billed by Feldman should not be counted due to a lack of work description because Plaintiff has withdrawn those hours. *See* Feldman Decl. at ¶¶ 11.

the grounds for their case; the Court sees no reason why it should punish the attorney that researches the law and facts before putting paper to pen.  Furthermore, Defendants' cases are distinguishable.  Unlike the present case, *Cyr* was not a class action and did not involve the substantive law at issue here.  *Cyr*, 2008 U.S. Dist. LEXIS 110336 at *16 (reducing hours spent drafting an ERISA complaint).  *Johnson*, also unlike the present case, "presented a narrow, straight-forward factual and legal issue" and the complaint was only eight pages.  *Johnson*, 2010 U.S. Dist. LEXIS 143286 at *5-6.

Defendants also argue that the hours worked on the summary judgment motion should be reduced because the motion was never filed.  However, extensive authority supports awarding fees for time spent on unfiled motions.  *See Marbled Murrelet v. Pacific Lumber Co.,* 163 F.R.D. 308, 327 (N.D. Cal. 1995) (rejecting defendant's argument that plaintiffs should not be awarded fees for time spent on a second amended complaint and possible motion for reconsideration, both of which were never filed, where the court found that it had no reason to doubt plaintiffs' representation that the work was reasonably related to the case at hand); *ExperExchange, Inc. v. Doculex, Inc.*, No. C–08–03875 JCS, 2010 WL 1881484, *9 (N.D. Cal. May 10, 2010) (awarding party fees for time spent preparing a *Daubert* motion that was never filed and stating "[t]he fact that the motion was not, ultimately, filed, does not mean that the time spent preparing the motion was unreasonable."); *Rux v. Starbucks Corp.,* 2007 WL 1098550, *3-4 (E.D. Cal. Apr. 12, 2007) (granting attorneys' fees for time spent drafting plaintiff's portion of a related joint statement regarding a discovery dispute which was ultimately not filed in light of defendant's last minute agreement to produce the requested deponent).

Furthermore, Defendants neglect to recognize that Defendants choose to negotiate a settlement days before the deadline for filing summary judgment motions; if Defendants had wished to not pay Class Counsel's fees, Defendants could have settled earlier.  In addition, Plaintiff avers that it was only after Class Counsel met and conferred with Defense counsel on the motion for summary judgment that Defendants agreed to set a mediation date.  Therefore,

Class Counsel had no assurance that the matter would settle.  Given the looming motion cut-off deadline, Class Counsel was diligent in representing the certified class by preparing a motion.

In sum, the Court is not persuaded by Defendants' argument to reduce the fees incurred in writing the complaint or summary judgment motion.

### iii.   Hours billed for reviewing another's work or on internal communications were not duplicative

Defendants argue that the hours billed by one attorney reviewing another's work or on internal communications are duplicative and thus should be excluded from the lodestar figure. As the Court previously noted, this was a leanly-staffed case where more than 75% of the hours were billed by only two attorneys.  Thus, the Court declines to reduce the hours simply because Class Counsel kept each other informed about the case and double-checked each other's work; indeed, many motions this Court denies would have benefitted from a second read and more strategizing by the attorneys involved.

### iv.   Conclusion regarding hours

In sum, the Court rejects all of Defendants' arguments to reduce Class Counsel's hours. Accordingly, the Court holds that Class Counsel's hours are reasonable.  Furthermore, the Court notes that Class Counsel's hours are reasonable because they litigated this case for two years, after class certification and up to the eve of summary judgment.  Courts have awarded significant fees for success achieved at much earlier stages of litigation.  *See Elder v. Nat'l Conference of Bar Examiners*, C 11-00199 SI, 2011 WL 4079623, *4, 4 n.4 (N.D. Cal. Sept. 12, 2011) (awarding $215,361.05 in attorneys' fees under Section 12205 for merely obtaining a preliminary injunction); *Pereira v. Ralph's Grocery Co.*, CV 07-841 PA(FFMX), 2010 WL 6510346, *1, 7 (C.D. Cal. July 1, 2010) (awarding $649,037 in attorneys' fees under ADA and CDPA in class action settlement and finding reasonable multiplier that increased "by two-thirds of the lodestar").

### c.   Conclusion

Under the parties' settlement agreement, Class Counsel can not recover more than $725,000 in attorneys' fees and costs.  Because the Court concludes that the lodestar figure of

745,520.37 in attorneys' fees and $47,167.52 in costs is reasonable, the Court need not consider additional arguments by Plaintiff to increase this figure by a multiplier.[12]

In addition, the Court finds Plaintiff's enhancement award of $18,000 to be reasonable.

**IV.    Disposition**

For the foregoing reasons, the Court GRANTS Plaintiff's motion.  The Court AWARDS: (1) Class Counsel $725,000 in attorneys' fees and costs; and (2) Plaintiff $18,000 as an enhancement award.

DATED: May 30, 2012

_David O. Carter_

_____

DAVID O. CARTER

UNITED STATES DISTRICT JUDGE

---

[12] Although Defendants offer post-hoc criticisms of the settlement agreement that appear to question hours billed given the lack of complexity of this case, this argument is too underdeveloped to constitute a basis for reducing Plaintiff's fees under the *Kerr* factors. Furthermore, courts have awarded fees even where the case was incredibly simple and straight-forward.  *Hull v. Rossi*, 13 Cal. App. 4th 1763, 1769 (1993) (reversing denial of attorneys' fees under Section 1021.5 even though lower court was "correct" that the opponent to the party seeking fees offered arguments that were "minor, inconsequential and a 'piffle'" because the lower court "abused its discretion in holding that any court would have so found [for the successful party] without the aid of [movant's] attorneys").